2012 Ark. 224

**Michael TORNAVACCA, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–702.**

Supreme Court of Arkansas.

May 24, 2012.

Rehearing Denied Aug. 14, 2012.

**730**

J. Sky Tapp, Tapp Law Offices, Hot Springs, for Appellant.

Dustin McDaniel, Atty. Gen., Karen Virginia Wallace, Asst. Atty. Gen., for Appellee.

COURTNEY HUDSON GOODSON, Justice.

Appellant Michael Tornavacca appeals the order of the Hot Spring County Circuit Court denying his petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure. For reversal, appellant contends that (1) the circuit court erred in finding that he

was not deprived of due process upon his discharge from the drug-court program; (2) the circuit court erred in ruling that he did not receive ineffective assistance of counsel when he was terminated from the program; (3) the circuit court erred in finding that he had committed two "strikes" in drug court; and (4) the drug court in Hot Spring County has fundamentally flawed procedures in terms of due process. We have jurisdiction pursuant to Rule 37 and Arkansas Supreme Court Rule 1–2(a)(8). We affirm the circuit court's decision.

The record reflects that on September 22, 2008, the prosecuting attorney in Hot Spring County filed an information charging appellant with theft of property, a class B felony, and theft of property, a class C felony. According to the affidavit for probable cause, appellant ₂drove a truck, which he was hired to wash, without permission from the owner and refused to return it upon the owner's request. The affidavit also stated that a shotgun was inside the truck and that the weapon was not found when the police recovered the vehicle.

On November 24, 2009, appellant entered a negotiated plea of guilty to the offenses for which he would receive the maximum statutory penalties of twenty and ten years in prison, to be served consecutively, in exchange for the opportunity to participate in the drug-court program. At the plea hearing, appellant acknowledged that he was freely and voluntarily entering the guilty pleas; that he had not been coerced; that he was not under the influence of intoxicants; and that he was satisfied with the services of his attorney. Appellant also affirmed that he understood his rights and that, by pleading guilty, he was waiving, among other things, his right to a jury trial, his right to compel the attendance of witnesses, and his right to

confront adverse witnesses called by the State. The circuit court also elicited affirmative responses from appellant that he understood the operation of the drug court and that he would serve thirty years in prison if he failed to meet his obligations by garnering three "strikes" in drug court. Appellant also confirmed his understanding that a judgment of conviction would not be entered of record if he successfully completed the program. After establishing a factual basis for the charges, the circuit court accepted the guilty pleas and the recommended sentences totaling thirty years' imprisonment. Pursuant to the plea agreement, the court deferred the entry of judgment pending appellant's successful completion of the drug-court program.

Appellant does not dispute that he acquired his first strike in drug court on June 24, ₃2010, when he tested positive for the consumption of alcohol. For this violation, the circuit court sanctioned appellant by requiring him to spend four days in the detention facility. At issue in this appeal is what transpired on November 1, 2010, when the circuit court decided that appellant had committed his second and third strikes. On that date, the circuit court met privately, at what the court refers to as a "staffing," with members of the drug-court team, consisting of the department of correction probation officer, the administrative assistant to the drug court, a department of correction counselor, a representative of the prosecuting attorney's office, and a public defender, Gregory Crain. After this conference, Crain met briefly with appellant, who was not privy to the matters discussed at the staffing, and then the circuit court addressed appellant in open court. The court announced that, on October 26, 2010, appellant's "color of the day" was called for him to take a drug test; that appellant did not respond; and that he was found drunk that day at a home visit. The cir-

cuit court also stated that, on October 27, 2010, appellant abused prescription medication by taking "a major dose of pills" that resulted in his hospitalization. Appellant did not contest the incident that occurred on October 26, but he explained to the court that he had a "reaction" to the blood-pressure medicine he had been prescribed and the muscle relaxant he was taking for a pinched nerve; that he was not taking the medicines to "get high"; and that the medication "was taken in confusion." Appellant requested a second chance to remain in the program, and then the following exchange occurred:

THE COURT: I'm not giving you another choice. There were statements made at the hospital that are a matter of the hospital records that when you get out you would do it again. When you abuse the medication you were given and were given permission from this Court to take, and then use them in excess.

APPELLANT: It was not an intentional use to get high. It was in confusion.

THE COURT: Well, it wasn't going to get high. It was going to cause death.

APPELLANT: It almost did.

THE COURT: This is the reason you're getting thirty years in the Arkansas Department of Correction. That's what you pled to. That's what you're going to get. That's the order of the Court. You have got strike two and three based upon your action in taking that medication. Mike, I've known you to do great things for this court, but what you have done to yourself and the fear of what you might do even further to yourself because of this, even though you do great things, when you slide back this far, this quick, in two days is a disaster

looking for a place to happen. I wish you the best of luck in the world.

On November 8, and November 24, 2010, the circuit court entered a judgment and commitment order and an amended judgment reflecting appellant's earlier guilty pleas to two counts of theft of property and cumulative sentences of thirty years in prison. Both judgments contained the notation that

THE DEFENDANT, HAVING BEEN ACCEPTED INTO DRUG COURT ON 11–24–2009, HAS BEEN FOUND GUILTY OF VIOLATING CERTAIN CONDITIONS OF THE DRUG COURT PROGRAM, THEREFORE ON 11–01–10 THE DEFENDANT WAS INCARCERATED AWAITING BED SPACE AT ADOC, AND IS ORDERED TO SERVE THE SENTENCE TO WHICH HE ORIGINALLY PLED.

On January 27, 2011, appellant filed a petition for postconviction relief, which he amended on January 28, 2011. In the petitions, appellant challenged the factual bases for the circuit court's determination that appellant had committed two strikes in October 2010. He also asserted that he received ineffective assistance of counsel at his "revocation" from the drug-court program.[1]

The circuit court conducted a hearing on February 23, 2011. At that time, appellant's counsel offered additional arguments to support his claim for postconviction relief. He asserted that the circuit court issued the final two strikes without a hearing and that the decision was based on information that the court had learned without the taking of testimony. Appellant maintained that, before his expulsion

1. Appellant raised additional allegations of error in his petition and amended petition that he has not pursued on appeal. These issues are deemed abandoned. *Springs v. State,* 2012 Ark. 87, 387 S.W.3d 143.

from the program, he was entitled to notice of the allegations and a hearing at which he could exercise the right to confront and cross-examine witnesses brought against him. Further, appellant claimed that Crain, his counsel, was ineffective for not protecting his right to due process.

After appellant summarized his arguments, the circuit court heard testimony from a number of witnesses. First, Crain testified that he was the drug-court public defender in attendance on the day that appellant was suspended from the program. He said that he learned about the proposed strikes at the staffing and that he argued on appellant's behalf that the incidents that occurred on October 26 and 27 should be considered as one strikable offense, instead of two. Crain stated that he spoke with appellant before the hearing and advised him of the allegations. He testified that appellant expressed no desire to call any witnesses and that "appellant seemed to think that he had done enough to get two strikes." Crain stated that he did not advise appellant of a right to a hearing to rebut the allegations because appellant had waived his rights upon entry to the drug-court program. In his experience, there had never been a hearing regarding the imposition of strikes.

Phyllis Lemons, the public defender who initially represented appellant on the charges, testified that she was not aware that appellant had been given any documentation advising him about what his rights were in drug court. She assumed that drug-court personnel would pass along that information. Lemons stated that the circuit judge gives participants the opportunity to present evidence to refute allegations of misconduct. She said, however, that she did not believe that a hearing was necessary in most instances "because some strikes are so obvious that there is no defense to them."

John Woolem, the probation and parole officer assigned to the drug court, testified that it is explained to drug-court participants that they must obtain approval before taking prescription or over-the-counter medication. Woolem stated that, on October 25, 2010, appellant called to ask permission to take Soma for a back ailment. Woolem said that he denied appellant's request after discussing the matter with Linda White, the drug court's administrative specialist, because the drug had been prescribed for a previous condition. Woolem testified that drug-court participants are required to phone the call-in line every day and to leave a message recording their name and the time of the call. Woolem testified that the next day, October 26, appellant called him on his personal cell phone at 7:42 a.m. to say that his back was hurting and that he could not come in that day. Woolem testified that the message machine for the call-in line stated that appellant was to report for a drug test that day, and he said that he advised appellant that he was scheduled to take a drug test. He testified that appellant failed to call the drug court's call-in line on October 26 and that such a failure was considered an automatic positive test for drugs. Woolem said that appellant's personal call to him that morning did not satisfy the call-in requirement.

Woolem further testified that he visited appellant's home on October 26 after appellant had failed to report for testing. He said that he saw two beer bottles and a bottle of Soma sitting on a small loveseat. Woolem stated that appellant smelled of alcohol and that he was shaking and appeared to be experiencing a condition known as delirium tremens. He testified that appellant admitted that he had been drinking and advised that he had disposed of other beer bottles.

Woolem also visited appellant's home on October 27, 2010. Woolem testified that he found appellant unresponsive and in respiratory distress from a drug overdose, necessitating the dispatch of an ambulance. He said that he saw pills and beer bottles strewn about the house that day. Woolem was aware that appellant spent six days in the psychiatric unit at the hospital after this incident.

Courtney Thomas, another probation and parole officer, testified that she accompanied Officer Woolem to appellant's home on both October 26 and 27. She said that, on the 26th, appellant appeared to be experiencing withdrawals from alcohol and that appellant admitted that he had been drinking. Thomas stated that, on the 27th, they could not rouse appellant and that the paramedics felt the urgent need to transport him to the hospital for intubation. She said that she observed a bottle of pills and pills strewn all over the night stand, and more on a coffee table.

In his testimony, appellant said that he did not recall Woolem and Thomas being at his house on October 26, 2010, and he denied that he had been drinking that day. He also said that he was not asked to take a test on October 26. Appellant stated that, when he called Woolem on the 26th about his back pain, Woolem told him not to worry about anything and that he was "good for the day." He also said that he did not call Woolem to ask for permission to take Soma and that the only drugs that he had in his system on October 27 were those that had been prescribed to him. Appellant testified that he did not take an overdose of medication but that he had an allergic reaction to them. He introduced into evidence prescribing information with respect to Soma and his medication for hypertension. Appellant also stated that Crain did not inform him that he had a right to call witnesses and that he was not

given any forms advising him on how to defend against receiving a strike.

Appellant further testified that he taught classes in drug court and knew the rules. He acknowledged that drinking alcohol was strictly forbidden. Appellant also agreed that taking medication against the direction of a staff member would merit a strike. In addition, he said that not phoning the call-in line by 10:00 a.m. was a strikable offense.

Greg Faulk, a drug-court participant, testified that he was present at appellant's home on the day of the alleged overdose. He said that he did not see any evidence of alcohol or any pills strewn about. Connie Tornavacca, appellant's mother, testified that she found no evidence of alcohol when she visited appellant's house six days after the incident on October 27.

Appellant's medical records from his hospitalization were introduced into evidence. In giving a psychological history, appellant reported that his presenting problem was that "I was drinking and took too much medication." In a psychological evaluation, it was stated that appellant initially indicated that he had taken the medication "to get high." The report also stated that appellant had told a nursing assistant that he had suicidal ideations and that he would "go home and finish it." The records indicate that appellant was kept in the psychiatric unit "due to the severity of presenting symptoms including recent overdose and statements concerning self harm."

The circuit court entered an order denying appellant's petition for postconviction relief on February 25, 2011. The court found that appellant had failed to abide by the rules of the drug court because he consumed alcohol and did not call in on October 26. The circuit court also found that appellant committed a third strike on the 27th by taking Soma against the di-

rective of Officer Woolem not to take that medication. In its findings, the court noted that appellant agreed in his testimony that each of these transgressions warranted a strike. With regard to the claim of ineffective assistance of counsel, the court found that appellant had failed to demonstrate prejudice. Based on its findings that appellant violated the drug-court rules, the circuit court found that appellant had not shown that a new hearing was warranted because appellant had not presented sufficient evidence demonstrating that he should be "acquitted" of the violations. The circuit court also found that Crain discussed the allegations with appellant and that appellant did not request a hearing.

Next, the circuit court addressed appellant's contentions regarding due process. The court explained that staffings are conducted off the record due to the sensitive nature of the [10]matters discussed. The circuit court also stated that, from time to time, it has held hearings on strikes but that in most situations the violations are admitted or there are sufficient facts presented such that the participant does not contest the strike. The court said that appellant was present in court and was confronted with the allegations. The court found that, in this instance, appellant admitted consuming alcohol and Soma and that he did not request a hearing to challenge the allegations. The circuit court also stated that appellant waived his due-process rights when he pled guilty. Appellant filed a timely notice of appeal from this order.

As his first issue on appeal, appellant argues that he was not afforded basic rights of due process when he was discharged from the drug-court program. In support of this argument, appellant refers us to the decisions in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484

(1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In *Morrissey*, the United States Supreme Court recognized that parolees "suffer grievous loss" upon the revocation of parole, and the Court held that the liberty interest of a parolee falls within the protection of the Due Process Clause of the Fourteenth Amendment. The Court stated, however, that the revocation of parole was not part of a criminal prosecution and thus the "full panoply of rights" due a defendant in such a proceeding does not apply to parole revocations. *Morrissey*, 408 U.S. at 480, 92 S.Ct. 2593. In *Gagnon*, the Court found that the liberty interest at stake for those on probation was indistinguishable from the liberty interest of a parolee, and the Court extended the same due-process protections to probationers. Appellant likens his expulsion from the drug-court program to the revocation [11]of parole and probation and argues that he was entitled to notice of the alleged violations, a hearing, and the right to confront and cross-examine witnesses before being discharged from the program.

Before the State addresses the substance of appellant's due-process claim, it advances several alternative arguments to support the denial of postconviction relief. As a preliminary matter, the State contends that, because appellant pled guilty to the charges, his argument is not cognizable in a Rule 37 proceeding, where claims after guilty pleas are limited to those alleging that the pleas were not made voluntarily and intelligently or were entered without effective assistance of counsel. *See Scott v. State*, 2012 Ark. 159, 2012 WL 1223751 (per curiam); *Jamett v. State*, 2010 Ark. 28, 358 S.W.3d 874 (per curiam). Appellant counters that he is not seeking postconviction relief based on his initial guilty pleas; but rather, he asserts that he is contesting the subsequent denial of his

constitutional rights when he did not receive a hearing before his expulsion from drug court.

The State is correct that the circuit court entered the judgments of conviction based on appellant's guilty pleas to the theft-of-property charges. However, we do not agree that appellant is foreclosed from raising this due-process argument under the present circumstances. In *Polivka v. State*, 2010 Ark. 152, 362 S.W.3d 918, Polivka pled guilty to two counts of attempted first-degree murder and one count of possession of a firearm by certain persons. Thereafter, he was sentenced by a jury pursuant to our bifurcated sentencing statute. After his sentences were affirmed by the court of appeals, Polivka sought postconviction relief alleging that he received ineffective assistance of counsel at sentencing. In allowing those claims to go forward, we recognized the familiar rule that "on appeal from the denial of a Rule 37 petition following pleas of guilty, there are only two issues for review—one, whether the pleas of guilty was intelligently and voluntarily entered, two, were the pleas made on the advice of competent counsel." *Polivka*, 2010 Ark. 152, at 5, 362 S.W.3d at 923 (quoting *Branham v. State*, 292 Ark. 355, 356, 730 S.W.2d 226, 227 (1987)). We stated, however, that this limitation is meant purely to restrict the ability of a defendant to directly attack a guilty plea. We found the rule inapplicable because no such concern exists when the defendant alleges errors that occurred at sentencing subsequent to the entry of the guilty plea.

Our reasoning in *Polivka* is applicable here. Appellant is not seeking to overturn his guilty plea. He is claiming a right to due process when he was subsequently expelled from the drug-court program. Moreover, "for many years, Arkansas has allowed collateral attacks upon a final conviction and appeal by means of a postconviction challenge to determine whether a sentence was void because it violated fundamental rights guaranteed by the Constitutions or laws of Arkansas or the United States." *Buckley v. State*, 349 Ark. 53, 66, 76 S.W.3d 825, 833 (2002) (citing *Davis v. State*, 345 Ark. 161, 44 S.W.3d 726 (2001) (holding that Rule 37 does not permit a petitioner to raise questions that might have been raised at the trial or on the record on direct appeal, unless they are so fundamental as to render the judgment void and open to collateral attack)). We have acknowledged that some issues are "so fundamental as to void the judgment absolutely" and that such issues will not be waived for purposes of postconviction relief by the failure to raise them at trial. *Rowbottom v. State*, 341 Ark. 33, 36, 13 S.W.3d 904, 906 (2000) (quoting *Finley v. State*, 295 Ark. 357, 363, 748 S.W.2d 643, 647 (1988)). We have applied this exception to claims of double jeopardy in *Rowbottom*, and the denial of a trial by a twelve-member jury in *Collins v. State*, 324 Ark. 322, 920 S.W.2d 846 (1996). Similarly, this court made it clear in *Swagger v. State*, 227 Ark. 45, 296 S.W.2d 204 (1956), that a judgment is void where there is an absence of due process. *See also Miller v. State*, 239 Ark. 836, 394 S.W.2d 601 (1965) (holding that the failure to observe the constitutional safeguards of due process renders a criminal conviction illegal and void).

In this case, appellant is not mounting a direct challenge to his guilty pleas. Instead, he is protesting his subsequent removal from the drug-court program that took place in a separate proceeding. In addition, his claim is one that touches on an issue that would render the judgment of conviction void. Thus, we hold that appellant's due-process claim qualifies as an issue that may be raised in a Rule 37 proceeding.

■ The State also argues that appellant waived his rights of due process in drug court when he entered the guilty pleas. It is true that a criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution. *Echols v. State*, 354 Ark. 414, 125 S.W.3d 153 (2003) (Imber, J., concurring) (citing *United States v. Mezzanatto*, 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995)). However, we are unable to find a waiver in this instance. When appellant pled guilty, he waived his rights with respect to a *trial* on the underlying charges of theft of property. The waiver of rights appellant announced at that time did not ⌊14encompass those that he might assert in drug court. Otherwise, the record contains no specific waiver, either in writing or orally on the record, stating that appellant was renouncing his due-process rights while attending the drug-court program. We cannot presume a waiver from a silent record. *Smith v. State*, 264 Ark. 329, 571 S.W.2d 591 (1978); *Barger v. State*, 249 Ark. 878, 462 S.W.2d 216 (1971); *see also Stephens v. State*, 295 Ark. 541, 750 S.W.2d 52 (1988) (stating that courts should not presume acquiescence in the loss of fundamental rights). Thus, we find no merit in the State's argument.

■ Third, the State points out that postconviction relief is not warranted because both appellant and the State presented the evidence at the Rule 37 proceeding that would have been marshaled had a hearing been held at the time of expulsion. Under the peculiar circumstances of this case, we are persuaded by the State's argument. If appellant were to successfully argue that he was entitled to basic rights of due process when he was discharged from the drug-court program, his postconviction remedy would be for the circuit court to conduct a hearing to determine whether appellant had violated the rules of the drug court. At the Rule 37 hearing, the issue of whether appellant committed his second and third strikes was fully aired, and based on the evidence presented, the circuit court found that appellant had consumed alcohol, that he did not phone the call-in line, and that he ingested medication that had not been approved. Thus, appellant has been accorded the benefit of an adversarial hearing regarding the strikes. The law does not require the performance of a vain and useless act, which would result even if we agreed with appellant's argument that he was entitled to ⌊15basic rights of due process. *See State v. Townsend*, 314 Ark. 427, 863 S.W.2d 288 (1993); *Williams v. State*, 304 Ark. 218, 800 S.W.2d 713 (1990). In addition, if an issue can be resolved without reaching constitutional arguments, it is our duty to do so. *Solis v. State*, 371 Ark. 590, 269 S.W.3d 352 (2007). Because appellant has essentially been provided the relief he is seeking, we find it unnecessary to address the merits of appellant's due-process argument.

For his next point on appeal, appellant contends that he was denied effective assistance of counsel when he was terminated from the drug-court program. Appellant argues that his counsel was ineffective because he did not advise him of his due-process rights, did not ask for a hearing, and failed to subject the prosecution's case to meaningful adversarial testing.

■ At the outset, we note that this court does not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Montgomery v. State*, 2011 Ark. 462, 385 S.W.3d 189. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has

been made. *Id.* In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id.* Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Id.*

In asserting ineffective assistance of counsel under *Strickland*, the petitioner must show that counsel's performance was deficient. *Williams v. State*, 2011 Ark. 489, 385 S.W.3d 228. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.* The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

In order to satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Montgomery, supra.* In doing so, the petitioner must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Williams, supra.* "[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052).

As stated earlier, appellant was afforded the rights at the Rule 37 hearing that he claims were denied to him when he was discharged from drug court. At the Rule 37 hearing, the circuit court made findings that appellant committed the strikable offenses, and with those findings, the court determined that appellant had suffered no prejudice as a result of alleged deficiencies in his counsel's performance. Stated differently, the circuit court found that appellant failed to show a reasonable probability that the fact-finder's decision to expel him from the program would have been different had his counsel raised a due-process argument. As the circuit court's ruling that appellant suffered no prejudice turns on the court's findings that appellant violated drug-court rules, in order to resolve appellant's ineffective-assistance-of-counsel issue, we must delve into appellant's next argument on appeal in which he contends that the court erred in finding that he committed two strikable offenses. We examine this issue under the clearly-erroneous standard of review. *Montgomery, supra.* Also, we are mindful that the credibility of witnesses is a question for the trier-of-fact in Rule 37 proceedings. *Atchison v. State*, 298 Ark. 344, 767 S.W.2d 312 (1989).

First, appellant contends that the circuit court's findings are inconsistent, arguing

that it is unclear what misbehavior the circuit court counted as strikes. However, sifting through the entirety of the circuit court's decision, it is evident that the circuit court found that appellant consumed alcohol and did not telephone the drug-court call-in line on October 26 and that he took Soma without permission on October 27. We perceive no lack of clarity in the circuit court's order.

■ Appellant next argues that his failure to phone the call-in line was excusable because he called Woolem that morning. However, Woolem testified that appellant's personal phone call to him did not satisfy the call-in requirement. In his testimony, appellant also admitted that failing to call was a strikable offense. Based on the evidence, we cannot say that the circuit court's finding is clearly erroneous.

■ In addition, appellant contends that he did not intentionally take an overdose of medication. However, the circuit court did not find that appellant overdosed. The court found that appellant violated a drug-court rule by taking Soma when he did not have permission to do so. Appellant also challenges this finding, noting that he testified that he had permission to take that medication. In contradiction, Woolem testified that he did not grant appellant's request to take Soma. The circuit court resolved the conflict in the testimony by giving more credence to Woolem's version of events. Thus, we are unable to say that the finding is clearly erroneous.

■ Finally, appellant argues that the State provided no physical evidence that he had been drinking alcohol on October 26. The State did not produce a blood-alcohol test, but the absence of physical evidence is not dispositive. Both Officers Woolem and Thomas testified that appellant admitted to them that he had been drinking. The circuit court could accept this testimony, as well as the testimony that appellant smelled of alcohol, that there were beer bottles in the house, and that appellant was shaking and apparently in alcohol withdrawal. The circuit court's finding is not clearly erroneous.

Because the circuit court's findings that appellant committed his second and third strikes are not clearly erroneous, we conclude that the circuit court did not clearly err in finding that appellant failed to demonstrate a reasonable probability that the outcome would have been different had his counsel raised a due-process objection. In the absence of prejudice, we affirm the circuit court's decision that appellant did not receive ineffective assistance of counsel.

■ In his remaining point on appeal, appellant argues that the drug-court program in Hot Spring County suffers from procedural flaws that result in the denial of due process. He maintains that participants are not informed of their due-process rights upon entry into the program. Appellant also complains that staffings are conducted off the record and outside of the presence of the accused, which denies the right of a public trial. He again asserts that participants are not afforded a hearing to refute the allegations against them. Other than the right to a hearing, the other issues appellant discusses were not raised below. We do not consider issues that are raised for the first time on appeal. *Hayes v. State*, 2011 Ark. 327, 383 S.W.3d 824.

Affirmed.

GUNTER and DANIELSON, JJ., concur.

BROWN, J., dissents.

**740**

PAUL E. DANIELSON, Justice, concurring.

I agree with the result reached by the majority opinion that this case should be affirmed. However, I write separately because I believe it extremely important to discuss the special nature of drug court.

The Arkansas Drug Court Act appropriately refers to drug court as a program. *See* Ark.Code Ann. § 16–98–301 to 309 (Repl.2006 & Supp.2011). The goals of drug-court programs in Arkansas include:

(1) Integration of substance abuse treatment with justice system case processing;

(2) Use of a nonadversarial approach in which prosecution and defense promote public safety while protecting the right of the accused to due process;

(3) Early identification, with the use of a validated risk-needs assessment, of eligible moderate-to-high-risk participants and prompt placement of eligible participants;

(4) Access to a continuum of treatment, rehabilitation, and related services;

(5) Frequent testing for alcohol and illicit drugs;

(6) A coordinated strategy among the judge, prosecution, defense, and treatment providers to govern offender compliance;

(7) Ongoing judicial interaction with each participant;

(8) Monitoring and evaluation of the achievement of program goals and effectiveness;

(9) Continuing interdisciplinary education to promote effective planning, implementation, and operation; and

(10) Development of partnerships with public agencies and community-based organizations to generate local support and enhance drug court effectiveness. Ark.Code Ann. § 16–98–302 (Supp.2011).

Once a defendant pleads guilty and agrees to take part in a drug-court program, the traditional adversarial roles of all involved in a particular case necessarily change and a team approach begins. "Drug court programs may require a separate judicial processing system differing in practice and design from the traditional adversarial criminal prosecution and trial systems." Ark.Code Ann. § 16–98–303(d)(1) (Supp.2011). The circuit judge is to assign the drug-court team, which may include:

a circuit judge, a prosecuting attorney, a public defender or private defense attorney, one (1) or more addiction counselors, one (1) or more probation officers, one (1) or more private treatment provider representatives, and any other individual or individuals determined necessary by the drug court judge.

Ark.Code Ann. § 16–98–303(d)(2).

I agree with the conclusion reached in both the majority and the dissent that a defendant does not waive his right to minimum due-process protections and that due process may not be totally abandoned even given the special nature of drug court. However, I do not believe that Tornavacca was denied the required due process here.

Although Tornavacca was not present at the meeting of the drug-court team at which the status of his case was discussed, he was called to court and notified that he was going to be removed from the program because he had three violations, or "strikes," against him. Tornavacca came to court and had an opportunity to be heard; indeed, he did provide explanations to the court about his recent violations of the program. Therefore, Tornavacca had notice regarding removal from the program, had an opportunity to be heard, and

was present when the court ordered his removal from the program and invoked his sentence.

Given the special nature of drug court, its purpose and intent, its nonadversarial and team approach, I believe Tornavacca was given appropriate due process in the instant case. I also believe that the role of defense attorney, along with others involved in the drug-court program, necessarily changes and his or her actions in drug court will not always lend to the traditional Rule 37 challenges. Therefore, I agree with the outcome of the majority opinion to affirm the order of the circuit court.

GUNTER, J., joins.

ROBERT L. BROWN, Justice, dissenting.

Michael Tornavacca urges on appeal that he was denied due-process protection in the form of notice, a hearing, and the right to be present at the staffing meeting when his termination from the drug-court program was decided. The result was his immediate incarceration for a thirty-year sentence. Because I believe that minimal procedural due-process protections apply to drug-court terminations and afford him the right to be present when the termination decision is made, I dissent.

Tornavacca pled guilty to theft of a vehicle and a shotgun and received the maximum thirty-year sentence. His sentence, however, was placed on hold in exchange for his participation in the drug-court program. He was told by the trial judge at sentencing that he would have to serve the full thirty years if he did not meet the conditions of the program.

On November 1, 2010, the trial judge had a "staffing" meeting with various members of the drug-court team, including a prosecutor's representative and a public defender, where Tornavacca's violations of the conditions were discussed. Tornavacca was not present at this meeting.

After the meeting, the trial judge informed Tornavacca that he had three violations, or "strikes," against him and that he would be removed from the program and incarcerated immediately to begin his thirty-year sentence. The following colloquy occurred between the trial judge and Tornavacca.

THE COURT: [O]n October 26th we had a surprise call ... [a]nd there was a home visit conducted and you were found to be drunk. At home.

DEFENDANT: Yes, sir.

THE COURT: Then after that on October the 27th you took a major dose of pills. Some of them pain pills, some of your—

DEFENDANT: Prescribed.

THE COURT:—your, your pain pills for what?

DEFENDANT: Blood pressure and a pinched sciatic nerve in my back.

THE COURT: And that caused you to go to the hospital and had to be pumped.

DEFENDANT: Intubated.

THE COURT: And, pursuant to that, that brings about two separate and distinct issues: one related to alcohol, one related to your own prescription medication which you abused. And you already had one strike and now you get two more. And it's not inconsistent with what this Court's always done. They are two separate distinct events.

DEFENDANT: Your Honor, the medication that I came off, had a reaction. I was on the medication for a long time. And it had a reaction and it was, it was confusion. It wasn't taken to get high. It was just, it was taken in confusion. It was confusion. That

medication does not—it would remove the pain in the nerve in my back. And—

THE COURT: That would be the pain medication.

DEFENDANT: Well, it's a muscle relaxer that relaxes the muscles around the nerve. I need back surgery, but I didn't want to do that in Drug Court. And the medication made me confused ... I hope you give me another chance. Because I did not take the, I did not take a narcotic to get high. I had no idea what was going on at that point.

THE COURT: Well, I'm not.

DEFENDANT: And I've never, and I've never lied to you.

THE COURT: I know that. I'm not giving you another choice. I mean, there were statements made at the hospital that are a matter of hospital records that when you get out you'd do it again. You know, when you abuse the medications that you were given and given permission from this Court to take, and then use them to excess—

DEFENDANT: It wasn't an intentional use, Your Honor, in excess—

THE COURT: Well, they were.

DEFENDANT:—to get a high. It was in confusion—

THE COURT: Well, it wasn't going to get high. It was going to cause death.

DEFENDANT: It almost did.

THE COURT: I know.

DEFENDANT: You know.

THE COURT: That's the reason you're getting 30 years in the Arkansas Department of Correction. That's what you pled to. That's what you're going to get. That's the order of the Court. You have got strike two and three based on your actions in taking that medication ....

Contrary to the trial judge's conclusions, the majority opinion correctly concludes that Tornavacca did not waive his right to contest the alleged violations. The majority, though, refuses to conclude that Tornavacca was denied procedural due process by the private staffing meeting. Rather, the opinion states that "[u]nder the peculiar circumstances of this case," post conviction relief is not warranted because both Tornavacca and the State presented evidence at the postconviction Rule 37 hearing that would have been introduced had a hearing been held at the time Tornavacca was ousted from the drug-court program. There are several things wrong with the analysis that postconviction relief is not warranted because a Rule 37 hearing occurred almost four months after the staffing meeting and Tornavacca's ouster. Is the majority saying that the delayed Rule 37 hearing cured an initial due process violation? It would seem that it the majority's position, but the opinion should be clear as to whether the staffing procedure constituted a due process infringement. I conclude that it did.

As a second point, I question whether a subsequent collateral hearing (the Rule 37 hearing) on the ineffectiveness of counsel should substitute for a hearing on the violations that was denied him and led to his thirty-year incarceration. This later hearing seems more like a patchwork-quilt remedy for Tornavacca than a legitimate protection at the time his drug-court participation was terminated. Surely, the purpose behind a hearing on the alleged violations of conditions as a part of drug-court termination and the purpose behind a later ineffectiveness hearing are categorically different. Even though similar witnesses might be involved in both hearings, the tenor of the two proceedings is not the same. In addition, today's precedent suggests that other constitutional violations or

errors that occur at an initial proceeding or trial can be "cured" by a later Rule 37 hearing. That should not be.

Without question, the drug-court program serves a laudable purpose and seeks to salvage the lives of drug offenders caught up in the criminal-justice process. Yet minimizing basic protections against loss of liberty, such as notice and the right to be heard on whether conditions have in fact been violated, appears to me to be an extraordinary due-process flaw.

Other states have raised similar concerns about procedural due process and have afforded due-process protection prior to termination from participation in their respective drug-court programs. *See, e.g., State v. Shambley,* 281 Neb. 317, 795 N.W.2d 884 (2011); *Gosha v. State,* 931 N.E.2d 432 (Ind.Ct.App.2010); *State v. Rogers,* 144 Idaho 738, 170 P.3d 881 (2007). In doing so, these three states have recently interpreted and extended the United States Supreme Court's decisions in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (holding that certain minimum due-process requirements apply to parole revocations) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (applying the same to probation revocations), to post-guilty-plea programs like drug-court programs.

In 2011, for example, after considering the Court's decision in *Morrissey,* the Nebraska Supreme Court in *Shambley* held that participants in drug-court programs are entitled to the same due-process protections as persons facing termination of parole or probation. *Shambley,* 795 N.W.2d at 894. The court explained that while restrictions on the liberty of drug-court participants may depend on their individual program plans, participants are not imprisoned, and, like parolees or probationers, they may still do a wide range of things. *Id.* The termination of the conditional liberty granted drug-court participants, the court said, inflicts a "grievous loss" similar to the loss of parole or probation. *Id.*

The court went on to explain the State's interests in drug-court programs:

> The State's interests, as in parole or probation, include an interest in being able to terminate participation in the program without the burden of a full adversary criminal trial. But perhaps even more so than in parole or probation, the State has little necessity for summary treatment. Drug court participants must generally plead guilty in order to qualify for the program, and the State thereby avoids the burden of a full adversary trial in the first instance. Furthermore, in order to qualify for the program, the crime cannot be a crime of violence and the offender must not have a significant criminal history of crimes of violence. Thus, the risk inherent to any delay caused by conducting a termination hearing is minimal.
>
> As with parole and probation, it is in the State's interests that drug court participants are restored to a normal and useful life. This is, after all, the point of the program. Accordingly, the State, like the participant, has an interest in seeing that there is a termination process which ensures participants are not terminated from the program because of erroneous information or because of an erroneous evaluation of the need to terminate.

*Shambley,* 795 N.W.2d at 894 (internal citations omitted).

After considering the relative interests of the State in the drug-court program together with those of the State in parole or probation, the court concluded that the State's interests in those two areas were essentially the same. *Id.* at 894–95. As a

result, the court held that minimal due process to which a parolee or probationer is entitled under *Morrissey* and *Gagnon* also applies to participants in the drug-court program. *Shambley*, 795 N.W.2d at 895.

Similarly, in 2010, the Indiana Court of Appeals held that minimum due process considerations are required before termination of participation in the drug-court program. *See Gosha*, 931 N.E.2d at 433. In *Gosha*, the court, citing *Morrissey* and *Gagnon*, explained that a defendant has "a protected liberty interest such that he must be accorded procedural due process before the court may terminate his participation in the Drug Court Program and reinstate his original sentence." *Id.* at 434. The same due-process rights which are afforded a defendant in probation revocation proceedings were applied to defendants participating in the Drug Court Program. *Id.* According to the court, the minimum requirements include "written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine witnesses, and a neutral and detached hearing body." *Id.* at 435.

Likewise, in 2007, the Supreme Court of Idaho concluded that a defendant who pleads guilty in exchange for entrance into a diversionary drug-court program has a liberty interest in remaining in that program, and is, therefore, entitled to procedural due process before he or she may be terminated from that program. *See Rogers*, 170 P.3d at 884–85. The court also explained that the liberty interest involved—remaining in the program—is akin to that in probation and parole revocation hearings. *Id.* at 885. The court held that the defendant was entitled to the restricted due-process protections as articulated in *Morrissey*. *Id.* at 886.

The court further cautioned that the termination process is flexible and is not equated to a separate criminal prosecution and may be informal, as long as the safeguards are provided. *Id.* As a final point, the court concluded with an explanation of the applicability of its holding to the ultimate sanction of termination from the program:

> We understand that similar to the [drug court program], many diversionary programs are informal in nature, and we do not want to unnecessarily impede the functioning of diversionary programs. The principles articulated in this opinion apply only when a participant in a diversionary program is facing termination from the program because that is when the participant faces a loss of liberty. Intermediate sanctions imposed in these programs do not implicate the same due process concerns, and continued use of informal hearings and sanctions need not meet the procedural requirements articulated here.

*Id.*

Arkansas's Drug Court Act specifically provides for minimum due-process protection.

> (b) The goals of the drug court programs in this state shall be consistent with the standards adopted by the United States Department of Justice and recommended by the National Association of Drug Court Professionals and shall include the following key components:
>
> . . . .
>
> (2) Use of nonadversarial approach in which prosecution and defense promote public safety while protecting the right of the accused to due process.

Ark.Code Ann. § 16–98–302(b)(2) (Supp. 2011). In the instant case, minimum due-

process protection was not afforded to Tornavacca before he was sent to prison.

No doubt the argument will be made that drug-court goals have such merit that an infringement on due-process rights pales when compared to the overall benefit to society realized from the program. And yet here, for example, a man is sent to prison for thirty years without the opportunity to contest the violations mounted against him at the private staffing conference where the termination decision was made; nor was he provided with a similar opportunity to provide a defense before the judge when he was terminated from the program. A postconviction hearing held almost four months after the fact cannot substitute for that opportunity to immediately contest the staffing decision where termination was decided. The protections outlined in *Morrissey* and in the drug-court diversionary-program cases should apply before a defendant is removed from participation in the drug-court program in Arkansas.

As a final point, contrary to the assertions made in the concurring opinion, Tornavacca was not provided notice or the opportunity to be heard prior to being removed from the program because, by the time the trial judge addressed him about his "strikes" following the staffing meeting, the decision to remove him from the drug-court program had already been made. Moreover, the colloquy conducted between the trial judge and Tornavacca on the record at the time of his termination cannot be interpreted as affording Tornavacca the right to be heard, as he certainly was not given the opportunity to present evidence or cross-examine witnesses.

I conclude that minimum procedural due-process protection as guaranteed under the Arkansas and United States Constitutions was not provided to Tornavacca in the instant case. Accordingly, I dissent.