Courtney Hudson Goodson, Justice, concurring. I agree with the majority’s disposition of this appeal and join it. I write separately to highlight additional due process concerns raised by the facts of the case. Through our decision in this case as well as our previous decision in Tornavacca v. State,2012 Ark. 224, 408 S.W.3d 727, this court has joined with many other states in holding that defendants participating in drug court[1] are entitled to. certain fundamental protections, including the right to notice and a hearing prior to termination from the, drug court program. As .we noted in Tornavacca, these protections emanate from the twin decisions of the United States Supreme Court in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), holding that certain minimum due-process requirements apply to parole revocations and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), applying those protections to probation revocations. At the heart of the decisions in Morrissey and Gagnon was the Court’s recognition that revocation of parole or probation results in a “grievous loss” of liberty to the defendant. Morrissey, 408 U.S. at 482, 92 S.Ct. 2593. Like defendants facing revocation of probation or parole, defendants terminated from drug court are also sentenced to a term of imprisonment, and accordingly, they experience a similar loss of liberty. |uThe Court in Morrissey emphasized that, at a minimum, due process requires that defendants facing a loss of liberty be provided with “(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a ‘neutral and detached’ hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.” Morrissey v. Brewer, 408 U.S. at 489, 92 S.Ct. 2593. In line with these requirements, Arkansas has established procedures to provide minimum ’ protections for defendants facing probation revocation. Ark.Code Ann, § 16-93-307 (Supp.2015). We have noted that these protections are designed to comply with the decisions in Morrissey and Gagnon. Lockett v. State, 271 Ark. 860, 611 S.W.2d 500 (1981). Additionally, the Arkansas Drug Court Act specifically provides for minimum due process protection, stating that one goal of the program is the “[u]se of a nonadversarial approach in which prosecution, and defense promote public safety while protecting the right of the accused to due. process. Ark.Code Ann. § 16-98-302(b)(2) (Supp.2015) (emphasis added). In this case, it is clear that the procedures in the Saline County drug court program fell far short of the necessary minimum due process protections outlined in Morrissey. First, the record does not indicate that Neal was provided with written notice of.any kind regarding the allegations supporting his removal from the drug court program. We have held that a | isdefendant has a right to written notice of the allegations against him before his probation can be revoked and that a revocation procedure is “fundamentally unfair” if a defendant cannot properly prepare for the hearing because he is denied advance knowledge about what charges of misconduct are to be investigated as a basis for the proposed, revocation of the probation. Hawkins v. State, 251 Ark. 955, 957, 475 S.W.2d 887, 888 (1972). Thus, the failure to provide written notice of impending termination from .the drug court program can result in a due process violation. See, e.g., State v. Cassill-Skilton, 122 Wash.App. 652, 94 P.3d 407 (2004); Hagar v. State, 990 P.2d 894 (Okla.Crim.App.1999). Second, although Neal did speak at the sentencing hearing, he was not given the opportunity to present evidence or witness testimony to support his position that he should not be terminated from the program or to cross-examine adverse witnesses, Moreover, the fact that he was allowed to address the court in the form of a question during the hearing is of little consequence because it is clear from the colloquy between Neal and the circuit court that the decision to terminate Neal from the program had already been made in advance of the hearing. Indeed, the circuit court imposed Neal’s sentence before Neal spoke, stating, “Mr. Neal, in being sent out of the 90-day program you basically have given us no choice on this one. Um,. at this point, we’re imposing your sentence.” Even after Neal argued to the court that he was being improperly terminated from the program, the circuit court did not address his concerns, stating instead, “I’m going to answer [your question] and we’re gonna be done in about two seconds.” Thus, it is abundantly clear from the record that this hearing was not a meaningful opportunity to be heard. [ ifiThird,. I question whether the decision to terminate Neal from the drug court program was made by a “neutral and detached hearing body” as required by the Morrissey decision. Pursuant to the Arkansas Drug Court Act, the circuit court judge may sit on the drug court team assigned to manage the drug court cases. Ark,Code Ann. § 16-98-303(d)(2). As a result, the Act “requires the judge, to participate in legislating the drug court program, supervising the execution of the program, and then adjudicating the issue of whether the probationer has violated the rules that same judge helped legislate and enforce. In the process, the probationer- is denied his due process guarantee of a hearing before an objective, uninterested, and impartial judge.” Alexander v. State, 48 P.3d 110, 116 (Okla.Crim.App.2002) (Lumpkin, J., concurring). At least one appellate court has recognized a violation of a defendant’s due process rights if the circuit court does not conduct its own independent analysis of the case but instead relies on the recommendations of the drug court team. State v. Stewart, No. M200800474CCAR3CD, 2008 WL 4467179 (Tenn.Crim.App. Oct. 6, 2008). In this case, during Neal’s guilty-plea hearing, the circuit court judge acknowledged that the drug court team, including himself, the prosecutor, and the defense attorney, regularly talked about drug court participants out of court and without the participant present. In fact, the court admitted that “there are times if you screw up that we’ll not only talk about you, we’ll decide what punishment we’re going to do before we ever tell you.” Then, in dismissing Neal from the drug court program, the circuit court stated, “[A]s I understand it, it has to do not. only with that incident, but in general, Jason, you’re not fit for this program 117because you don’t want to—you don’t want to do the things to get through this program that you have to do. And you end up with your negativism pulling everyone down.” Because there was no testimony during the hearing, it is unclear precisely how the circuit court reached its conclusion that Neal “[didn’t] want to do the things - to get through this program” or that Neal’s “negativism [was] pulling everyone down.” One can only assume that this information and the recommendation for termination came from the private meetings of the drug court team. Finally, although it appears that Neal sought his recusal, the same judge presided over and denied his request for Rule 37 relief that is the subject of the instant appeal. These circumstances raise a serious question as to the impartiality of the judge in his role as a neutral and detached hearing body. Fourth, Neal did not receive a written statement by the circuit court as to the evidence relied on and the reasons for removing him from the drug court pro-' gram, as required by Morrissey. Notably, this requirement is codified in section 16-93-307 for revocation of probation, and such a requirement should extend to cases in which a defendant is removed from the drug court program. Indeed, a written order is critical to allow the defendant to appeal from the termination decision. Hagar, supra. Fifth, I am concerned by the apparent lack of counsel Neal received after entering the drug court program. Most concerning is that the record does not indicate that Neal was assisted by counsel at the sentencing hearing. In Gagnon, supra, the United States Supreme Court noted that in certain instances, counsel may be required for a defendant facing revocation of probation. The court stated, I ^Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. Gagnon, 411 U.S. at 790, 93 S.Ct. 1756. In this case, it appears that Neal argued that he had not committed the violation alleged and, accordingly, he may have been entitled to counsel under the analysis in Gag-non. Additionally, the very structure of drug court gives -.me pause regarding whether defendants are receiving adequate and zealous representation once they enter the program. The structure of the drug court system changes the role of the defense lawyer from that of an advocate for the defendant to a member of a non-adversarial team with, among others, the prosecutor and judge. As one writer has argued, “[Fjorced non-adversarialism can place defense attorneys, in conflict with clients as well as interfere with the provision of competent and zealous representation as required by law.” Mae C. Quinn, Whose Team Am I on Anyway? Musings of A Public Defender About Drug Treatment Court Practice, 26 N.Y.U. Rev. L. & Soc. Change 37, 58 (2001). This problem comes to a crisis point and the non-adversarial system breaks down when the drug court team seeks to terminate the defendant from the program, such as happened to Neal in this case. Next, the form that Neal signed to enter the Saline County Drug Court program required him to agree.to a sentence that was 25% longer than he would receive if he were not a Drug Court participant. Neal argues that'this agreement resulted in him being sentenced to 420 months’ imprisonment, despite the maximum sentence for his crimes being 384 |19months.[2] Sentencing is entirely a matter of statute in Arkansas, and a circuit judge may only impose a sentence authorized by statute. Harness v. State, 352 Ark. 335, 101 S.W.3d 235 (2003). Furthermore, we have held that circuit judges dealing with drug court offenders are bound by the general sentencing guidelines. Cross v. State, 2009 Ark. 597, 357 S.W.3d 895. As we noted in Cross, “ [Tjhe Drug Court Act reveals no provision granting drug-court judges special sentencing authority ... Furthermore, this court has recognized that a circuit judge lacks the authority to sentence a defendant otherwise than in accordance with Chapter 4 of the Arkansas Criminal Code.” Id. at 10, 357 S.W.3d at 901. Thus, to the extent that the Saline County Drug Court form purports to authorize a sentence in excess of the maximum statutory sentence, it is improper. As a final note, because the instant statutory scheme' provides that “each judicial district of the state is authorized to establish its own drug' court program,” there is little consistency in the various drug court programs across the state. See Ark.Code Ann. § 16-98-303(a). These inconsistent procedures from one drug court tó another suggests “local rules,” which we have disallowed in Arkansas for almost 30 years. Weaver v. State, 296 Ark. 152, 752 S.W.2d 750 (1988) (recognizing abolishment of local rules through revocation of Ark. R. Civ. P. 83). Additionally, because there is no uniform practice regarding the procedure or | ^documentation of drug court proceedings, this court is left with very little substance to review to ensure that defendants are being treated fairly. In short, the facts of this case raise a myriad of concerns regarding the handling of drug court cases. While I recognize the laudable goals of the drug court program, the benefits of the program cannot excuse a denial of fundamental due process to even one criminal defendant. The drug court program can succeed without sacrificing constitutional liberties. In light of this court’s recognition that drug court participants are entitled to the protections afforded to parolees and probationers under Morrissey and Gagnon, I believe a reworking of the current drug court system may be necessary to ensure systematic protection of constitutional rights for its participants. Hart and Wynne, JJ., join. . Although the program is called drug "court,” it is actually a nonadversarial treatment program that includes judicial oversight and'coordination between the judge, prosecutor, defense, and treatment providers. See Ark.Code Ann. § 16-98-302 (Supp.2015). . The State argued at oral argument that Neal’s guilty plea agreement contained an error in that it did not identify that Neal was sentenced as a habitual offender, and accordingly, his sentence was not in excess of the maximum sentence. Regardless of this factual dispute, the fact that the Saline County Drug Court program requires a defendant to agree to a 25% harsher sentence without expressly limiting the sentence to the statutory máximums allows for the possibility of an illegal, sentence.