

Cite as 2016 Ark. 352

# SUPREME COURT OF ARKANSAS.

**No.** CR-16-505

| | |
|---|---|
| COHEN JAMES DAVIS | **Opinion Delivered** October 20, 2016 |
| APPELLANT | |
| V. | PRO SE MOTION FOR EXTENSION OF TIME TO FILE BRIEF; MOTION FOR APPOINTMENT OF ATTORNEY [SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT, NO. 66CR-14-1014] |
| STATE OF ARKANSAS | |
| APPELLEE | |
| | HONORABLE STEPHEN TABOR, JUDGE |
| | APPEAL DISMISSED; MOTIONS MOOT. |

**PER CURIAM**

Appellant Cohen James Davis filed a pro se petition for postconviction relief pursuant to Rule 37.1 (2015) of the Arkansas Rules of Criminal Procedure, which was denied by the trial court. Davis lodged this appeal, and has filed two motions in which he seeks an extension of time to file his brief and also asks this court to appoint appellate counsel. Because it is clear that Davis cannot prevail on appeal, we dismiss the appeal, and Davis's motions are moot.

On July 2, 2015, Davis pleaded guilty to first-degree murder and rape by forcible compulsion in connection with the death of his two-year-old niece, Naomi, who, while in the care of Davis was brought to the emergency room in critical condition. Naomi subsequently died of a torn duodenum which, according to the medical examiner, had occurred shortly before Naomi arrived at the hospital. Furthermore, medical evidence

demonstrated that Naomi had sustained tears to her vaginal area which were likewise determined by the medical examiner as having been inflicted shortly before her arrival at the hospital.

The sentencing order, filed on July 6, 2015, sentenced Davis to 240 months' imprisonment for rape[1] and 360 months' imprisonment for murder. The record demonstrates that on July 9, 2015, Davis filed a request to revoke his guilty plea, which was denied by the trial court. Thereafter, Davis filed a timely, verified Rule 37.1 petition on August 28, 2015, alleging that his guilty plea was not voluntarily and intelligently made but was the result of the ineffective assistance of his counsel, Ernie Witt. In support of his claim, Davis alleged that he was transported to the courthouse under the mistaken belief that he was to appear in court for a DHS hearing.[2] Davis further alleged that upon arrival at the courthouse he was informed by Witt that a good deal had been reached whereby Davis would be sentenced to forty years' imprisonment plus twenty years' imprisonment for both charges. According to Davis, he initially refused the offer but was told by Witt that if he pleaded guilty, DHS would return his children to the custody of his wife. Witt further stated: "you're a Christian man aren't you? Do the right thing send your babies home."

---

[1] As part of the plea negotiation, the charge of rape of a person under the age of fourteen was amended to the charge of rape by forcible compulsion because the former charge carried a minimum sentence of twenty-five years' imprisonment, and the plea agreement encompassed a sentence of twenty years' imprisonment for rape.

[2] Davis is referring to the Department of Human Services which had removed Davis's two children from his wife's custody as a result of the charges filed in this case. The proceedings before DHS were ongoing at the time Davis pleaded guilty, and Davis's wife had also initiated divorce proceedings.

Davis further alleged that Witt threatened him as follows: "Look at me when I speak to you . . . this is completely out of character for you, I don't know what happened but I do know the state is going to put you to death so choose life." According to Davis, Witt ordered him to sign the plea statement, and, when Davis asked what he should say in court, Witt replied, "you won't say anything except what the Judge asks and what I tell you." Davis asserted that as a result of the pressure and threats attributed to Witt, Davis was in shock and gave in because he was mentally exhausted.

The trial court appointed postconviction counsel and conducted an evidentiary hearing. At that hearing, Witt testified that he thoroughly reviewed the medical records as well as the autopsy report and had hired co-counsel to assist in reviewing the medical records. According to Witt, the State's evidence strongly supported the charges filed against Davis, and the medical records clearly supported the rape charge. Witt asserted that he did not recall the exact circumstances which culminated in Davis's decision to plead guilty, but asserted that prior to the date of the plea, Witt had visited Davis at the jail and thoroughly reviewed the plea offer. Witt further testified that Davis never expressed an unwillingness to enter a guilty plea, and Witt emphatically denied telling Davis that his guilty plea would result in DHS returning his children to the custody of his wife or that Davis would face the death penalty if he did not plead guilty.

The trial court allowed the introduction of evidence consisting of the testimony of Davis's mother, Patricia Green, and the admission of portions of the medical records which Davis had contended were relevant in that such evidence established a possible defense of

medical malpractice as the cause of Naomi's injuries and death.[3]   Davis argued to the trial

court that the testimony and evidence demonstrated that Witt failed to properly advise Davis

of the existence of this allegedly exculpatory evidence before pressuring Davis to plead

guilty.

Davis testified and reiterated the allegations set forth in his postconviction petition

which have been enumerated above.  In addition, Davis testified that Witt did not allow

him access to the medical records or the police reports connected with the investigation of

his case.  However, Davis admitted that Witt allowed him to review the autopsy report and

the autopsy photographs.  Finally, Davis admitted that Witt had discussed parole eligibility

with him.   In addition to the testimony and medical evidence presented during the

postconviction hearing, the transcript of Davis's plea hearing was admitted into evidence

and considered by the trial court.

The trial court denied relief primarily based on its credibility findings.  The court

stated: "[t]he credibility of the Petitioner, weighed against that of Mr. Witt is the greatest,

though not the sole factor in the Court's decision."   The court also concluded that Witt's

testimony was consistent with the other evidence before the court including testimony

presented during Davis's plea hearing.   Specifically, the trial court noted that Davis was

advised of the penalties with respect to the charged offenses and would have known that

---

[3] The medical records were introduced through the testimony of Davis's mother, Patricia Green, who testified that she was a "senior care provider" and therefore understood medical records and medical terminology.   Green testified that the medical records revealed the following significant information:  that there was no evidence of bleeding upon admission to the hospital; that Naomi was conscious when admitted to hospital; and that an adult-size catheter was inserted by hospital staff.

the death penalty was not an option when he pleaded guilty; that Davis advised the court that he had reviewed the plea documents with Witt and stated that he had no questions for the court; that Davis confirmed that he understood his right to a jury trial, the right to confront witnesses on his own behalf and acknowledged that he understood he was waiving those rights; that Davis was able to accurately relate to the court his plea agreement and denied that his plea was the product of force, threats, or coercion of any kind; and that Davis acknowledged the facts to which he was pleading guilty  The court also noted that Davis admitted that Witt allowed him to call his mother on the day of the plea, which belied Davis's contention that Witt had been attempting to strong arm Davis into pleading guilty. With respect to the testimony of Davis's mother and the medical records presented in connection with her testimony, the trial court concluded that only four pages of the voluminous medical records had been introduced at the hearing and the findings of the autopsy had not been presented.  The trial court further concluded that there was nothing contained in those four pages establishing a possible defense to the charges that had been overlooked by Witt.[4]

This court does not reverse a denial of postconviction relief unless the trial court's findings are clearly erroneous.  *Robinson v. State*, 2016 Ark. 211, at 3–4, 492 S.W.3d 77, 79−80.  A finding is clearly erroneous when, although there is evidence to support it, after

---

[4] Specifically, the trial court noted that the medical records established that upon arrival at the hospital Naomi was observed to be listless and becoming less and less responsive; that she did not interact as expected of a child her age; and that she was in distress and wearing pajamas soaked with stool.  The trial court noted that these observations were made before any medical intervention was undertaken.

reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *Id.* This court defers to the trial court's superior position to ascertain witnesses' credibility, and the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Strom v. State*, 348 Ark. 610, 616–17, 74 S.W.3d 233, 237(2002); *see also Barber v. State*, 2014 Ark. 179, at 4 (per curiam); *Smith v. State*, 2013 Ark. 166 at 4 (per curiam). Where the testimony is conflicting, we do not pass upon the credibility of the witnesses and have no right to disregard the testimony of any witness after the finder of fact has given it full credence, where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Davenport v. State*, 373 Ark. 71, 73, 281 S.W.3d 268, 270 (2008).

The effectiveness of counsel is assessed under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984): that the performance of petitioner's counsel was deficient, that is, made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, and the petitioner was prejudiced by counsel's performance. *Robinson*, 2016 Ark. 211, at 4, 492 S.W.3d at 80. Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Tornavacca v. State*, 2012 Ark. 224, at 16, 408 S.W.3d 727, 738.

When the *Strickland* ineffectiveness test is applied to situations involving the entry of a guilty plea, the question is whether, but for counsel's unprofessional errors, there is a reasonable probability that the petitioner would not have pleaded guilty and would have

insisted on going to trial. *Robinson*, 2016 Ark. 211, at 4, 492 S.W.3d at 80. In discussing the *Strickland* standard, with respect to allegations of ineffective assistance of counsel when a guilty plea has been entered, the first half of the standard requires that counsel's advice to plead guilty must fall outside the range of competence demanded of attorneys in criminal cases. *Id*. at 4, FN 1 (*citing Tollett v. Henderson*, 411 U.S. 258 (1973)). Therefore, on appeal from the denial of a Rule 37.1 petition following guilty pleas, there are only two issues for review—one, whether the plea of guilty was intelligently and voluntarily entered and, two, was the plea made on the advice of competent counsel. *Mancia v. State*, 2015 Ark. 115, at 11, 459 S.W.3d 259, 267 (citing *Branham v. State*, 292 Ark. 355, 356, 730 S.W.2d 226, 227 (1987)).

Here, Witt's testimony that he had advised Davis to plead guilty based on his professional assessment of the strength of the State's evidence and that Davis voluntarily and intelligently pleaded guilty was deemed to be more credible than the contradictory testimony of Davis. This credibility finding cannot be disregarded on appeal because, after a review of the totality of the evidence, it cannot be said that the trial court's credibility finding was inherently improbable or clearly unbelievable. *Davenport*, 373 Ark. at 73, 281 S.W.3d at 270. Moreover, the trial court did not clearly err when it rejected Davis's allegation that his counsel's advice to plead guilty fell outside the range of competence demanded of attorneys in criminal cases. *Robinson*, 2016 Ark. 211, at 4, 492 S.W.3d at 80. Because Davis failed to establish the first part of the *Strickland* standard, there is no showing that his conviction resulted from a breakdown in the adversarial process that rendered his conviction unreliable. *Tornavacca*, 2012 Ark. 224, at 16, 408 S.W.3d at 738. Based on the

above, it is clear from the record that Davis cannot prevail on appeal, and his motion for an extension of time to file a brief and his motion for appointment of counsel are moot.

Appeal dismissed; motions moot.