Neil S. FINLEY *v.* STATE of Arkansas

CR 87-200                                         748 S.W.2d 643

Supreme Court of Arkansas
Opinion delivered May 2, 1988

*Larry Dean Kissee*, for appellant.

*Steve Clark*, Att'y Gen., by: *Lynley Arnett*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. This appeal arises from appellant's request for post-conviction relief from a jury verdict on July 18, 1984, finding him guilty of burglary and theft charges, and another conviction judgment dated September 7, 1984, which resulted from appellant's pleas of guilty to four additional counts of burglary and theft charges. The trial court rejected appellant's contentions that he had been wrongfully denied the procedural safeguards of the Interstate Agreement on Detainers Act (IAD Act) and that his counsel had been ineffective by failing to invoke the IAD Act before and at the time of his convictions. Because the law and the record support the trial court's holding, we affirm.

Appellant argues that Article IV of the IAD Act became applicable when the Izard County Circuit Court lodged detainers against him while in the custody of federal authorities on bank robbery charges. In this respect, appellant points to the court's order dated March 29, 1984, directing him to be transferred from federal detention to Izard County for arraignment and trial settings.[1] On April 3, 1984, the court's bench warrant was served on appellant who, sometime in April 1984, appeared before the Izard County Circuit Court. Appellant pled innocent to all charges and then moved that the charges be severed.[2] The trial court granted appellant's severance motion and set July 16, 1984, as the first trial date. After his arraignment, appellant was returned to federal custody. He later was returned to Izard County for the July 16, 1984 trial and was convicted by a jury on one count of burglary and theft of property and given consecutive sentences of twenty years imprisonment on each crime. On September 7, 1984, appellant pled guilty to the remaining counts of burglary and theft of property.

In citing Article IV(c) and (e) of Ark. Code Ann. § 16-95-101 (1987), the appellant's argument is two-fold: (1) Once the state gained custody of appellant, the court was required, under subsection (e), to try the criminal charges pending against him prior to his being returned to the federal authorities, or dismiss all of the charges with prejudice; (2) alternatively, even though the July 16, 1984 trial was held within the 120-day requirement set out in subsection (c), the September 7, 1984 hearing and conviction judgment on the remaining charges were beyond the 120-day period and should, as a consequence, be set aside and the charges dismissed.

---

[1] The court issued a similar order dated April 27, 1984.

[2] The various dates of court appearances and transfers are not clear from the record, but for the purpose of applying the IAD Act, it appears the state first received appellant at least by April 3, 1984, when he was arrested pursuant to the court's bench warrant. Although unnecessary for purposes of determining the legal issues here, the other background events and dates leading to the appellant's conviction commenced in November 1983, when appellant was arrested and incarcerated in Izard County on burglary and theft charges. He subsequently escaped and fled the state, but in January 1984, he was arrested in California on an outstanding fugitive warrant from Arkansas. Appellant was later transferred to the federal authorities in Arkansas, where he pled guilty to a federal bank robbery charge on April 23, 1984.

The state responds by first arguing that the IAD Act never came into play since no detainer, as that term is used under the Act, had ever been lodged against the appellant. Second, even if the Act applies, the state urges that the appellant was required to object to his retransfer to the federal authorities, in order to raise the issue that, pursuant to the speedy trial provisions of the Act, the state charges must be concluded prior to his return.

■ In addressing the parties' respective contentions, we first must disagree with the state's argument that a detainer was never filed in this cause so as to permit the appellant to invoke the provisions of the IAD Act. While the Act itself contains no definition of the word "detainer," the Supreme Court noted in *United States* v. *Mauro*, 436 U.S. 340 (1978), that the House and Senate Reports explained that "a detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." In addition to the explanation given the term "detainer" in *Mauro*, we note Article IV(a) of the Act which provides as follows:

> The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V (a) hereof upon *presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated* . . . . (Emphasis added.)

Here, the Izard County Circuit Court issued a clear directive providing that the sheriff make arrangements for the transfer of the appellant to state custody so proceedings could go forward on the state charges pending against him. That order further provided for appellant's return to federal custody after the state proceedings. We have no hesitation in characterizing the Izard court's order a detainer, as that term is used and understood under the Act.

■ Although we agree with the appellant that a detainer was lodged against him which would have invoked the speedy trial provisions under the IAD Act, we cannot agree that the

state's actions, contravening the Act's provisions, require a dismissal of his charges. As we noted earlier, the appellant urges that the state violated Article IV(e) of the Act by returning him to the federal authorities sometime in April 1984, without fully trying him on any of the charges pending against him.[3] However, even assuming the state's action was contrary to Article IV(e), such a violation is a non-jurisdictional error and is therefore waivable by a criminal defendant. *Camp* v. *United States*, 587 F.2d 397 (8th Cir. 1978). In rendering such a holding in *Camp*, the 8th Circuit Court of Appeals held that the violation of Article IV(e) did not deny the court jurisdiction to entertain a guilty plea when the defendant failed to raise the issue in a timely manner. *See also United States* v. *Palmer*, 574 F.2d 164, 167 (3d Cir.), *cert. denied*, 437 U.S. 907 (1978), and *United States* v. *Ford*, 550 F.2d 732, 742 (2d Cir. 1977), *aff'd sub nom. United States* v. *Mauro*, 436 U.S. 340 (1978) ("The provision [Art. IV(e)], . . . which is intended to avoid the disruption in a prisoner's rehabilitation occasioned by repeated transfers between jurisdictions, is thus for his benefit and is waivable"). In the instant case, appellant neither requested a speedy trial, nor mentioned the IAD Act.

This brings us to appellant's final argument, *viz.*, that he was burdened with ineffective assistance of counsel. On this point, appellant argues that, if his counsel had raised the speedy trial provisions of the IAD Act after having been transferred to the federal authorities and prior to appellant's trial and convictions, the state's charges against him would have been dismissed with prejudice. We reject appellant's contention for a number of reasons.

■ First, this court has routinely held that Rule 37 is not available as a direct challenge to the admissibility of evidence or to raise questions of trial error. Questions of constitutional dimension must even be raised in the trial court in accordance with the controlling rules of procedure, or else the issues are

---

[3] Article IV(e) provides: "If a trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

waived, unless they are so fundamental as to void the judgment absolutely. *Howard* v. *State*, 291 Ark. 633, 727 S.W.2d 830 (1987).

Second, we again look to the *Camp* decision wherein the defendant maintained that he could not be said to have waived a right of which he was not aware. In response, the *Camp* court relied on *Schneckloth* v. *Bustamonte*, 412 U.S. 218 (1973), setting forth the following excerpt from that case:

> Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.

The court in *Camp* followed the foregoing by stating that the IAD Act amounts to nothing more than a statutory set of procedural rules which clearly does not raise it to the level of constitutionally guaranteed rights. The court explained further that the sanctions in Article IV(e) of the IAD Act have nothing to do with preserving a fair trial, but are instead intended only to prevent excessive interference with a prisoner's rehabilitation in the state prison system. *Id.*; *Camp*, 587 F.2d at 400. We agree with the rationale and holding in *Camp*, and, accordingly, conclude that the failure of appellant's counsel to raise the IAD Act below did not involve the waiver of such a fundamental right that would void a judgment.

Other reasons exist as to why appellant cannot prevail on his claim of ineffective assistance of counsel. We have held that counsel is presumed competent, and the burden of overcoming that presumption rests on the petitioner. *Franklin* v. *State*, 293 Ark. 225, 736 S.W.2d 16 (1987). We have also held that a petitioner having entered a guilty plea normally will have difficulty in proving any prejudice since his plea rests upon his admission in open court that he did the act with which he is charged. *Id.* Additionally, to prove ineffective assistance of counsel under the two-pronged test set forth in *Strickland* v. *Washington*, 466 U.S. 668 (1984), a petitioner must show that (1) counsel's performance was deficient in that counsel made an error so serious that he was not functioning as the "counsel" guaranteed by the sixth amendment to the Constitution; and (2) the deficient performance must have resulted in prejudice so

pronounced as to have *deprived* the petitioner *of a fair trial* whose outcome can be relied on as just.

██ In view of the foregoing standards of review, we first point out that appellant's conviction judgments entered on September 7, 1984, resulted from his guilty pleas, reflecting an admission in open court of the criminal acts of burglary and theft of property with which he was charged. In this same regard, we also note the settled law that a valid guilty plea operates as a waiver of all non-jurisdictional defects or errors. *Id., Camp* at 399. As we discussed earlier, the speedy trial provisions in the IAD Act are non-jurisdictional and waivable; nor do those provisions rise to the level of constitutionally guaranteed rights that are necessary in order to preserve the appellant a fair trial, as is required under the *Strickland* test. In sum, failure of appellant's counsel to raise the provisions of the IAD Act is not such deficient performance as to warrant the setting aside of appellant's conviction judgments.

██ We note, in conclusion, that appellant now complains that, if his counsel had been more knowledgeable about the IAD Act and had informed appellant of his rights, appellant would have chosen to invoke the Act, thus requiring the dismissal of all the charges against him. Appellant ignores the substantial testimony reflecting that his counsel discussed the speedy trial issue during trial preparation and in the later proceeding when he entered guilty pleas, but that appellant opted not to raise the issue. Counsel explained that appellant "wanted to go ahead and get the thing over with, one way or other and he wanted to go ahead and have the trial or enter a guilty plea . . . ." Appellant's counsel further testified that their primary concern, in negotiating the charges remaining against the appellant after the July 18, 1984 conviction, was to obtain concurrent sentences with the sentences already imposed. Thus, the record shows the appellant made an informed and strategic decision not to pursue the speedy-trial issue.

For the reasons set out above, we hold that the trial court was correct in denying appellant's request for post-conviction relief. Therefore, we affirm.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I think the counsel for the appellant was ineffective with respect to his failure to require the state to comply with the Interstate Agreement on Detainers Act (I.A.D.). He may have foreseen that the Arkansas courts would not force the state to comply with the I.A.D.; nevertheless, to preclude a claim of ineffective assistance of counsel, the attorney should have asserted the statutory right to a speedy trial. At the very least he should have explained the right to a speedy trial to his client and made a record for the trial judge and for appellate review. It now appears that perhaps counsel did not know the law himself. This is no disgrace; most lawyers are not familiar with many of the laws in connection with a case when the case commences. However, he should have found the answers and protected his client to the best of his ability. At the same time the performance of the attorney's obligations would have reduced the chances of a claim of ineffective assistance.

Article IV, sections (c) and (e) of the I.A.D. read as follows:

(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

. . .

(e) *If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.* [Emphasis added]

The state initiated this procedure and was bound to try the appellant within 120 days. It did not do so. Without objection the appellant was returned to the "sending state" (the United States) without being tried by the state of Arkansas. The consequences to the appellant in this case were exactly what the I.A.D. intended to prevent.

The majority opinion is part of a familiar pattern of judicial encroachment upon legislative and executive powers. No matter how clear and unambiguous a statute may be, the judiciary often bends the words into what the courts believe the law ought to be. There is no need to cite precedent in this dissent. Neither precedent nor the separation of powers doctrine seem to deter this court from making new law every Monday morning.