THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES J. ANDERSON, Defendant-Appellant.

Fourth District No. 4—04—0175

Opinion filed July 19, 2005.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Jack Ahola, State's Attorney, of Decatur (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE APPLETON delivered the opinion of the court:

Defendant, Charles J. Anderson, appeals from the trial court's judgment convicting him of burglary and sentencing him to 14 years' imprisonment. Defendant claims his due-process rights were violated when his participation in the previously imposed drug-court program was revoked without a hearing or explanation. Defendant further claims that during his bench trial, the court failed to properly admonish him pursuant to Supreme Court Rule 402(a) (177 Ill. 2d R. 402(a)). We reverse and remand.

## I. BACKGROUND

On March 23, 2001, defendant was charged with one count of burglary (720 ILCS 5/19—1(a) (West 2000)), and the public defender was appointed to represent him. After numerous continuances, on February 27, 2002, defendant filed a pro se motion for placement in the drug-court program. The trial court denied his request.

On March 5, 2002, defendant waived his right to a jury trial and on March 15, 2002, pleaded guilty in exchange for a five-year sentencing cap. The trial court entered a judgment of conviction and scheduled a sentencing hearing.

On April 30, 2002, defendant's counsel informed the trial court after defendant's plea he had discovered that defendant "may be eligible" for Class X sentencing. The State agreed to (1) allow defendant to withdraw his guilty plea and (2) refer him to the drug-court program. The court vacated defendant's guilty plea and reinstated the cause.

On May 10, 2002, the trial court ordered defendant to participate in the drug-court program pursuant to the Drug Court Treatment Act (Drug Court Act) (730 ILCS 166/1 through 35 (West 2002)). On May 17, 2002, defendant signed a drug-court-participation agreement, indicating that the burglary charge would be held in abeyance for 24 months pending his successful completion of the program, at which time his burglary charge would be dismissed. According to the agreement, defendant waived his right to a jury trial and his "right to confront and cross[-]examine the witnesses against [him]."

The agreement further revealed that defendant executed a stipulation of evidence wherein he agreed that he did in fact commit a burglary. By signing the agreement, defendant understood that he could be terminated from the program (1) if he failed to comply with any conditions of the program, (2) if he committed any criminal offense, or (3) upon his request. Another paragraph of the agreement set forth as follows:

> "I understand that upon unsuccessful termination from the [d]rug[-c]ourt [p]rogram this cause will proceed to immediate trial by the [c]ourt. I understand that the aforementioned [s]tipulation of [e]vidence will constitute the evidence received by the court at trial."

Prior to defendant signing the agreement, the trial court explained to him its provisions in open court. The court admonished defendant pursuant to Supreme Court Rule 402(a) (177 Ill. 2d R. 402(a)). Defendant indicated he understood and agreed. The court accepted and entered defendant's agreement and stipulation of evidence.

On January 24, 2003, the trial court's docket entry revealed, without further explanation, that the cause was reallotted for a January 31, 2003, bench trial. As a supplement to the record on appeal, defendant provided a letter dated April 5, 2005, from Judge Little as a substitute for a bystander's report of the January 24, 2003, hearing. Judge Little had "no independent recollection of what occurred in this case on January 24, 2003," but after reviewing the docket entry, he concluded only that the parties convened and scheduled the case for a bench trial. The court summarily dismissed defendant from the drug-court program.

On January 31, 2003, the trial court indicated it had two files on

defendant. Referring to this case as the one "subject of drug court," the court reviewed the May 17, 2002, stipulation and indicated it contained a sufficient factual basis to support a conviction for burglary. The court entered the conviction and scheduled the sentencing hearing for March 14, 2003.

On July 21, 2003, defendant filed a *pro se* motion requesting a hearing for the alleged violation of the drug-court program. Defendant's motion indicated he had engaged in criminal conduct; however, he had not been convicted of "said charges."

On September 11, 2003, the trial court conducted a sentencing hearing. Kent Bangart and Sharon Bangart testified that their home was burglarized on January 9, 2003. Kemper Willcut testified that his business and his home were burglarized on January 13, 2003. Based upon his familiarity with defendant, Willcut believed defendant was responsible. Property from all three burglaries was found in defendant's home. In closing argument, defendant's counsel said, "It is true my client was doing well in the [d]rug[-c]ourt program, and it is also true that my client was violated from [*sic*] the [d]rug[-c]ourt program." Counsel urged the court not to consider the evidence of the January 2003 burglaries because defendant had not been tried for those crimes.

After considering (1) the witnesses' testimony as evidence in aggravation, (2) defendant's statement in allocution wherein he denied committing any burglaries, and (3) arguments of counsel, the court sentenced defendant to 14 years in prison on the original reinstated burglary charge.

On February 26, 2004, defendant filed a *pro se* motion to vacate his sentence, alleging his sentence should be vacated because (1) he was found not guilty in Macon County case No. 03—CF—53, "the offense that violated him [*sic*] from the Macon County [d]rug[-c]ourt [p]rogram"; (2) the State moved to dismiss Macon County case No. 03—CF—130, "the offense that violated [*sic*] him from the [d]rug [-c]ourt [p]rogram; (3) he complied with the conditions of the drug-court program for nine months before being arrested for residential burglary on January 13, 2003; (4) a charge was erroneously included in his presentence investigation report; and (5) the trial court considered evidence in aggravation related to two new cases against him, unrelated to the sentencing offense.

Also on February 26, 2004, defendant filed a motion to proceed as a poor person and requested the appointment of counsel. The trial court reviewed defendant's motion to vacate, construed it as defendant's intent to appeal, instructed the circuit clerk to file a notice of appeal on defendant's behalf, and appointed the office of the State Appellate Defender to represent defendant. This appeal followed.

## II. ANALYSIS

Defendant appeals, claiming (1) his rights to due process were violated when he was not afforded a hearing prior to being dismissed from the drug-court program and (2) the trial court failed to properly admonish him pursuant to the dictates of Supreme Court Rule 402(a) prior to entering a judgment of conviction on the underlying burglary charge. We reverse and remand.

### A. Due Process

■ The purpose of the Drug Court Act is to provide the trial courts with an alternative to a criminal disposition or sentence by, under certain conditions, permitting a defendant to participate in a program addressing a defendant's admitted drug use or drug addiction with the hope of reducing the number of incidents of drug-related crimes in the State of Illinois. See 730 ILCS 166/5 (West 2002).

The legislature afforded each judicial circuit the opportunity to implement and operate, under its own established guidelines, a drug-court program pursuant to the Drug Court Act. See 730 ILCS 166/15 (West 2002). The imposition of a program may be preadjudicatory, as the case here, or postadjudicatory. A "pre[ ]adjudicatory drug[-]court program" is a program that allows the defendant, with the consent of the State, to expedite the defendant's criminal case prior to a conviction or before the filing of a criminal case and requires successful completion of the program as part of the agreement. See 730 ILCS 166/10 (West 2002). The defendant's criminal charges are held in abeyance until the program is completed either successfully or unsuccessfully. If the defendant is successful, the charges are dismissed or nol-prossed. If the defendant is unsuccessful, the charges may then be reinstated and prosecution of the case may proceed. See 730 ILCS 166/25 (West 2002).

The Sixth Judicial Circuit implemented a drug-court program setting forth various policies and procedures for an individual's eligibility and participation in the program. To be eligible, a defendant must sign an agreement that he understood he could be unsuccessfully terminated from the program if he (1) failed to comply with any conditions of the program, (2) committed any criminal offense, or (3) requested unsuccessful termination of the program.

■ Section 35 of the Drug Court Act (730 ILCS 166/35 (West 2002)) governs the violation, termination, and discharge of a defendant from the drug-court program. It states in relevant part:

> "(a) If the court finds *from the evidence presented* including but not limited to the reports or proffers of proof from the drug court professionals that:

\* \* \*

(3) the defendant has engaged in criminal conduct rendering him or her unsuitable for the program; or

(4) the defendant has otherwise violated the terms and conditions of the program or his or her sentence or is for any reason unable to participate;

the court may impose reasonable sanctions under prior written agreement of the defendant, including but not limited to imprisonment or dismissal of the defendant from the program and the court may reinstate criminal proceedings against him or her or proceed under [s]ection 5—6—4 of the Unified Code of Corrections [(730 ILCS 5/5—6—4 (West 2002))] for a violation of probation, conditional discharge, or supervision hearing." (Emphasis added.) 730 ILCS 166/35 (West 2002).

Neither the Drug Court Act nor the Sixth Judicial Circuit's policies and guidelines specify the procedures to be taken upon an alleged violation of the program. However, the language in section 35 of the Drug Court Act indicates the trial court should consider evidence, presumably presented at a hearing, of the defendant's conduct that could result in a dismissal from the program. According to section 35, the court's finding of a violation was a prerequisite to the imposition of sanctions, which include dismissal from the program. See 730 ILCS 166/35 (West 2000).

Our interpretation of the above-referenced statutory language, in light of the United State's Supreme Court's decisions in *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973), indicates that to comply with due process, a defendant is entitled to a hearing before he is dismissed from the drug-court program.

Our analysis begins with a comparison between the purposes of the drug-court program and those of probation, supervision, and parole. The main distinction between defendant's drug-court program and the imposition of supervision, probation, or parole is the timing of the programs' implementation in relation to the criminal disposition. Unlike the drug-court program at issue here, supervision, probation, and parole are imposed *after* a finding of guilt. However, we find the distinction is of no consequence and is not outweighed by the similarities.

"Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose." *Escoe v. Zerbst*, 295 U.S. 490, 492-93, 79 L. Ed. 1566, 1568-69, 55 S. Ct. 818, 819 (1935).

Likewise, a "parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole." *Morrissey*, 408 U.S. at 479, 33 L. Ed. 2d at 493, 92 S. Ct. at 2599.

Probation revocation, like parole revocation, is not part of a criminal prosecution, and thus the full panoply of rights due a defendant in such a proceeding does not apply. *Morrissey*, 408 U.S. at 480, 33 L. Ed. 2d at 494, 92 S. Ct. at 2600; *Gagnon*, 411 U.S. at 782, 36 L. Ed. 2d at 661-62, 93 S. Ct. at 1759-60. "Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey*, 408 U.S. at 480, 33 L. Ed. 2d at 494, 92 S. Ct. at 2600. "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' " *Morrissey*, 408 U.S. at 481, 33 L. Ed. 2d at 494, 92 S. Ct. at 2600, quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168, 95 L. Ed. 817, 852, 71 S. Ct. 624, 646-47 (1951).

In *Morrissey*, the Court held that upon an alleged parole violation, the parolee was entitled to a hearing akin to a preliminary hearing wherein the parolee would be notified of when the hearing would take place and that its purpose was to determine whether there was probable cause to believe he had committed a parole violation. *Morrissey*, 408 U.S. at 486-87, 33 L. Ed. 2d at 497, 92 S. Ct. at 2603. In *Gagnon*, the Court applied its *Morrissey* holding to the revocation of probation. *Gagnon*, 411 U.S. at 782, 36 L. Ed. 2d at 661-62, 93 S. Ct. at 1759-60.

> "Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion—the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community." *Gagnon*, 411 U.S. at 785, 36 L. Ed. 2d at 663-64, 93 S. Ct. at 1761.

Applying the Supreme Court's analyses to the Drug Court Act, we find both the interests of a defendant and the State are better protected only if the minimum requirements of due process are met, in the form of a hearing, prior to the revocation of or dismissal from participation in the drug-court program. See *Gagnon*, 411 U.S. at 786, 36 L. Ed. 2d at 664, 93 S. Ct. at 1761-62 (setting forth the minimum requirements of due process).

The drug-court program is a form of conditional liberty like supervision, probation, or parole. Each program requires the participant to comply with certain conditions or face the loss of the privilege. Revocation of that privilege may not be accomplished without inquiry.

Defendant was not the only one who had a stake in his "conditional liberty." Society also had an interest in seeing defendant, who admittedly needed the drug-treatment program, successfully complete the program with the hope of restoring him to a drug-free lifestyle within the law. Like defendant, society had an interest in not having him dismissed from the program based on erroneous information. See *Morrissey*, 408 U.S. at 484, 33 L. Ed. 2d at 496, 92 S. Ct. at 2601. The interests of both the State and defendant are furthered by a hearing—regardless of formality. See *Morrissey*, 408 U.S. at 484, 33 L. Ed. 2d at 496, 92 S. Ct. at 2602 (both parties' interests require an informal hearing that is structured to assure that the finding of a violation will be based on verified facts and accurate knowledge of the parolee's behavior).

■ Even though defendant did not have the right to participate in the drug-court program, as it was a matter of legislative and judicial grace, due process should circumscribe summary dismissal from that program. See *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970) (recipient had no right to welfare payments but was entitled to a hearing prior to termination of those payments). Defendant should have (1) been informed of the nature of the alleged violation, (2) been informed of the nature of the evidence against him, and (3) had the right to appear and be heard before he was dismissed from the program. Likewise, the court should have taken the opportunity to determine (1) whether defendant in fact acted in violation of one or more conditions of the program and, if so, (2) whether defendant should be tried on the original offense or if some other step, in accordance with the program guidelines, should be taken to improve his chances of rehabilitation. We find the trial court's summary dismissal was improper.

## B. Admonishments at Trial

■ Our decision reversing this case and remanding for a hearing on defendant's termination from the drug-court program obviates the need to address the sufficiency of the trial court's admonishments at defendant's bench trial. However, in the interest of judicial economy, we choose to do so.

In the event defendant's case proceeds to a bench trial, the trial court is under no obligation to further admonish defendant pursuant to the dictates of Rule 402(a) (177 Ill. 2d R. 402(a)). Defendant entered into the drug-court-participation agreement and stipulation of evidence on May 17, 2002. The agreement and the stipulation both indicate defendant agreed not only to the substance of the evidence but to its sufficiency as well. Because a stipulation to the sufficiency of

the evidence is tantamount to a guilty plea, the trial court was required to admonish defendant pursuant to Rule 402(a) prior to accepting his stipulation. See *People v. Smith*, 59 Ill. 2d 236, 242, 319 N.E.2d 760, 764 (1974). The court sufficiently did so on May 17, 2002, and there is no need to repeat the admonitions at a subsequent bench trial.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and remand this cause for a hearing consistent with our decision herein.

Reversed and remanded.

COOK, P.J., and McCULLOUGH, J., concur.