NOT DESIGNATED FOR PUBLICATION

No. 111,777

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANTHONY CONLEY,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed November 20, 2015. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., ATCHESON, J., and WALKER, S.J.

*Per Curiam*:  In 1998, a jury convicted Anthony Conley of murder. Since then, he has tried several times to have his conviction, sentence, or both overturned. Most recently, he filed a third K.S.A. 60-1507 motion and contended that the State violated his speedy trial rights. The district court dismissed the motion as untimely, successive, and lacking any meritorious claims. Because we find that Conley's motion was both untimely and successive and he has failed to present any exceptional circumstances or claims of manifest injustice sufficient to convince us that his motion should be heard on the merits, we affirm.

1

In 1998, a jury convicted Conley of the premeditated first-degree murder of Nicholas Armstrong. *State v. Conley*, 270 Kan. 18, 11 P.3d 1147 (2000) (*Conley I*). The district court imposed a hard 40 sentence, and our Kansas Supreme Court upheld his conviction and sentence. See 270 Kan. at 20-36.

After the Supreme Court ruled, Conley filed his first K.S.A. 60-1507 motion, which the district court denied after a nonevidentiary hearing. *Conley v. State*, No. 88,962, 2003 WL 23018226, at *1 (Kan. App. 2003) (unpublished opinion) (*Conley II*). This court upheld the denial in 2003. See 2003 WL 23018226, at *1-2. Still convinced of his wrongful imprisonment, Conley next filed a motion to correct illegal sentence in 2005. The district court summarily dismissed the motion, and on appeal, our Supreme Court upheld the decision as Conley's challenge to his sentence had been previously decided in *Conley I*. *State v. Conley*, 287 Kan. 696, 701-04, 197 P.3d 837 (2008) (*Conley III*).

Undeterred, Conley filed a second K.S.A. 60-1507 motion. *Conley v. State*, No. 106,372, 2012 WL 3136114 (Kan. App. 2012) (unpublished opinion), *rev. denied* 297 Kan. 1243 (2013) (*Conley IV*). The district court denied this motion as untimely and successive, and this court upheld the denial on the same grounds. See 2012 WL 3136114, at *1-2.

Most recently, in August 2013, Conley filed his third motion pursuant to K.S.A. 60-1507. There, he contended that the State had failed to comply with the Interstate Agreement on Detainers (IAD), K.S.A. 22-4401 *et seq.*, and had therefore violated his speedy trial rights. He also argued that his trial counsel was ineffective for failing to investigate the IAD issue.

In terms of why the district court should entertain this motion despite it being his third, Conley explained that he had at different points been either incarcerated in another state or on lockdown, which limited his access to Kansas state law materials. He also claimed that the transcripts and other documents he did have access to "gave the false impression" that his rights were not violated and that his trial counsel had previously informed him that the State had complied with IAD. Lastly, he argued that because the IAD statute fails to expressly lay out the procedure by which a defendant can raise an IAD claim, he "did not know where to appeal that issue."

Conley also recognized that this motion fell well outside the 1-year filing period present in K.S.A. 60-1507(f)(1). To justify this delay, Conley relied on the same essential circumstances: his limited access to legal materials, the misleading nature of his legal documents, his attorney's assurances concerning IAD, and the lack of explicit procedure present in the IAD statute. Conley also argued that the State's alleged IAD violation not only delayed his trial but caused him to be incarcerated in a maximum security prison and limited his participation in certain programs.

Turning to the merits of his claim, Conley contended that the district court and State violated the IAD by granting continuances that pushed his trial beyond the statutory time limit without either Conley or his attorney present. Such a violation, he argued, required that his case be dismissed with prejudice. He emphasized that he "repeatedly throughout the proceedings begged [his attorney] to investigate into the IAD violations," but his attorney never acted. Conley also argued that the speedy trial violation deprived him of several constitutional rights. To demonstrate that he was not present at several continuance hearings, Conley included multiple appearance summaries with his motion.

The State replied to this motion, arguing that it was untimely and successive and that Conley failed to meet the procedural prerequisites that would allow the district court to consider the motion on the merits. The district court agreed, finding: "This third

3

petition is untimely without any showing of manifest injustice. It is repetitive and without any new meritorious claims to consider." Conley timely appealed.

ANALYSIS

Conley acknowledges that his motion is untimely and successive, but claims he demonstrated both manifest injustice and exceptional circumstances to warrant consideration by the district court. He also contends that even if his motion is otherwise barred because it is successive and untimely, it should still be allowed on the basis that the merits of his underlying claim challenge the jurisdiction of the court, a challenge which can be raised at any time. We will examine his arguments after first setting forth our standard of review.

*Standard of Review*

This court conducts de novo review of a summary dismissal of a K.S.A. 60-1507 motion and determines whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Edgar v. State*, 294 Kan. 828, 836, 283 P.3d 152 (2012). The movant bears the burden of showing he or she is entitled to an evidentiary hearing and must raise contentions that are more than conclusory and either supported by a sufficient evidentiary basis or by a basis that is evidence from the record. 294 Kan. at 836; see *Holt v. State*, 290 Kan. 491, 495, 232 P.3d 848 (2010).

Likewise, whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Charles*, 298 Kan. 993, 1002, 318 P.3d 997 (2014).

4

*Conley failed to allege sufficient exceptional circumstances for the district court to consider his successive motion.*

A sentencing court is not required to entertain a second or successive motion under K.S.A. 60-1507 for similar relief from the same movant. *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013) (citing K.S.A. 60-1507[c]). Instead, the "movant in a K.S.A. 60-1507 motion is presumed to have listed all grounds for relief, and a subsequent motion need not be considered in the absence of a showing of circumstances justifying the original failure to list a ground." 296 Kan. 898, Syl. ¶ 2.

But our Supreme Court has carved out an exception for this rule if the movant is able to demonstrate exceptional circumstances that justify not including the current challenge in his or her first K.S.A. 60-1507 motion. See *Trotter*, 296 Kan. 898, Syl. ¶ 2. Our Kansas Supreme Court has construed exceptional circumstances to include "'"unusual events or intervening changes in the law which prevent a movant from reasonably being able to raise all of the trial errors in the first post-conviction proceeding."'" *State v. Mitchell*, 297 Kan. 118, 123, 298 P.3d 349 (2013). Ineffective assistance of counsel may also constitute an exceptional circumstance. *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009).

Conley points out a number of unusual events that he claims prevented him from raising his error in one of his prior K.S.A. 60-1507 motions. For one, he argues that his incarceration in federal prison and on lockdown cut off his access to state law materials. But Conley clearly filed other motions in this case during his time in federal prison and in lockdown, as he appealed the district court's rulings on them. See *Conley III*, 287 Kan. at 701; *Conley IV*, 2012 WL 3136114, at *1; *Conley II*, 2003 WL 23018226, at *1. Although not all of the underlying documents from these cases are in the record, he clearly cites to Kansas law in his motion to correct illegal sentence and a motion requesting to file a late appeal from that motion. Obviously, then, he had access to legal

materials in at least 2005 and 2007 but failed to raise the issue at that time. And he offers no argument that the issues he raised in other motions or the materials available to him to prepare them differed so significantly from this one as to require a finding of exceptional circumstances.

Second, Conley insists that certain transcripts and documents misled him into believing that the State complied with IAD. It is unclear from his motion whether the documents in question are the appearance summaries he submitted to the district court or something else. Regardless, Conley also claims that he suspected an IAD violation during the original proceedings in his criminal case—and therefore, more than a decade before the instant motion. Even if the documents appeared misleading or his attorney failed to pursue the issue, Conley's motion makes clear that he already had his suspicions regarding the IAD issue at the time he filed his direct appeal and his first K.S.A. 60-1507 motion. Conley's decision to put his speedy trial concerns aside for nearly 15 years is not an unusual event justifying a successive motion.

On appeal, Conley fails to pursue the third argument he asserted in the district court regarding his confusion over how to raise a speedy trial challenge under IAD. Issues not briefed are considered waived and abandoned. *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013). In sum, Conley fails to allege sufficient exceptional circumstances for the district court to consider this successive motion, and accordingly the district court did not err in dismissing it as repetitive or successive.

*Conley failed to make a sufficient showing of manifest injustice for the district court to consider his untimely motion.*

K.S.A. 60-1507(f)(1) provides that a defendant has 1 year from when the conviction becomes final to file a motion under the statute. This time limit can be

6

extended by the district court but only to prevent manifest injustice. K.S.A. 60-1507(f)(2).

Manifest injustice in this context means action that is obviously unfair or shocking to the conscience. *Vontress v. State*, 299 Kan. 607, 614, 325 P.3d 1114 (2014). That said, however, the question of whether manifest injustice exists is determined from the totality of the circumstances. Relevant factors include (but are not limited to): whether the movant provides a persuasive explanation for why he or she failed to comply with the time limitation; whether the merits of the claim raises substantial issues deserving of the district court's consideration; and whether "the movant sets forth a colorable claim of actual innocence, *i.e.*, factual, not legal, innocence." 299 Kan. at 616. Additionally, "failing to plead excuses for the filing delay may result in a greater risk that the movant's claim will be dismissed as untimely" because the movant bears the burden of proving manifest injustice. 299 Kan. at 617.

As an initial matter, Conley offers no argument on appeal that the merits of his claim or his actual innocence rise to the level of manifest injustice. Instead, he focuses solely on his lack of access to legal material as an excuse for his filing delay. Because he fails to pursue his other arguments regarding manifest injustice on appeal, we deem them waived and abandoned. *Boleyn*, 297 Kan. at 633.

Our court has considered lack of access to legal material as a basis for establishing the existence of manifest justice. In one case, the movant emphasized his limited legal knowledge and access to a law library as well as "his numerous transfers during his incarceration," but our court determined that these conditions did not rise to the level of manifest injustice. *Williams v. State*, No. 101,359, 2010 WL 174011, at *1 (Kan. App.) (unpublished opinion), *rev. denied* 290 Kan. 1105 (2010). Similarly, a movant in another case argued that he failed to comply with the 1-year time limit "because he did not get to

use the law library as much as he would have liked based on his schedule and prison employment." *Roediger v. State*, No. 107,746, 2013 WL 1688890, at *1 (Kan. App.) (unpublished opinion), *rev. denied* 297 Kan. 1247 (2013). Again, this court found that reason did not constitute manifest injustice. 2013 WL 1688890, at *2. We agree with the court's analysis in these two cases and find their facts indistinguishable from the facts here. Conley's periodic lack of access to the law library does not excuse his long delay in filing this motion.

Again, as the movant, Conley bears the burden of demonstrating manifest injustice. See *Vontress*, 299 Kan. at 617. But the narrowly tailored justification for his delay he champions on appeal fails to rise to this level. Therefore, the district court did not err when it denied the motion as untimely.

*Conley's underlying claim that the State violated the IAD does not present a jurisdictional question.*

Highly summarized, Conley's underlying claims is based on the provisions of Articles IV and V of the IAD. Article IV(d) of the IAD provides that the prisoner's trial must be commenced within 120 days of arrival of the prisoner in the receiving state. This time can be continued "for good cause shown in open court, the prisoner or his counsel being present." KS.A. 22-4401. Moreover, Article V(c) provides that if this time limit is not met, the court "shall enter an order dismissing the [indictment, information, or complaint] with prejudice, and any detainer based thereon shall cease to be of any force or effect." K.S.A. 22-4401.

Conley argues that he was not brought to trial within 120 days of arriving in Kansas. Accordingly the court was required to dismiss the charges against him with prejudice. He contends that the failure of the court to dismiss the charges implicates the court's jurisdiction. And, he reminds this court, issues of jurisdiction can be raised at any

time, including for the first time on appeal. See *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010). The State argues that the record does not establish a violation of the time limits set out in K.S.A. 22-4401.

Conley's contention that this is a jurisdictional claim that can be raised at any time fails on the merits. Our Supreme Court has held that the statutory speedy trial violations arising out of the IAD are not jurisdictional. See *State v. Rodriguez*, 254 Kan. 768, Syl. ¶ 3, 869 P.2d 631 (1994); see also *State v. Carter*, 151 Ariz. 532, 533-34, 729 P.2d 336 (Ct. App. 1986), *rev. denied* December 16, 1986; *Finley v. State*, 295 Ark. 357, 362, 748 S.W.2d 643 (1988); *People v. Moody*, 676 P.2d 691, 695 (Colo. 1984); *Mohler v. State*, 84 Md. App. 431, 437-39, 579 A.2d 1208 (1990). There have been no changes to the statutory provisions at issue since *Rodriguez* was decided. This court is duty bound to follow the Supreme Court precedent absent some indication the court is departing from its previous position. See *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). We are unaware of any indication that our Supreme Court is departing from this precedent.

Affirmed.