KAREN R. BAKER, Associate Justice | Appellant Jason Carroll Neal appeals the order of the Saline County Circuit Court denying his petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2015). On appeal, Neal argues that the circuit court erred in finding that (1) Neal was not deprived of due process upon his expulsion from the drug-court program without a hearing; and (2) Neal did not receive ineffective assistance of counsel. We reverse the circuit court’s order denying Neal’s petition for postconviction relief and remand for a hearing consistent with this opinion.- Neal entered a plea of guilty to breaking and entering, possession of firearms by certain persons, and possession of drug paraphernalia.[1] The guilty-plea statement states that the ^maximum punishment for each of the charges is as follows: twenty years’ imprisonment for the possession-of-firearms charge, six years’ imprisonment for the possession-of-drug-paraphernalia charge, and six years’ imprisonment for the breaking-and-entering charge. We note that, despite these maximum sentencés equaling 384 months’ imprisonment, thé guilty-plea statement contained a provision stating, “I understand that the negotiated plea I am entering includes a recommended sentence of: 420 month’s ADC.”[2] Also, at the time of the entry of the guilty plea, Neal executed the “Saline County Adult Drug Court Admission Form and Order CR-14-465 & CR-14-232A.” The drug-court admission form contained an express waiver of rights, including a waiver of Neal’s right to “any later Rule 37 Motions claiming ineffective assistance of counsel or any other constitutional grounds for release.” The form also' stated, “I understand the Plea Agreement I am signing below is approximately 25% longer than would be available if I were not a Drug |3Court Participant. I hereby agree to the terms of the- Judgment and Commitment Order, and I affirmatively state: I understand -the Judgment and .Commitment will be entered and the sentence will begin immediately if I am expelled from Drug Court for any reason. I understand the Judgment and Commitment is held in Abeyance and not dated or filed with the Circuit Clerk unless I am expelled from Drug Court.” Further, the form stated that Neal waived his “right to have legal notice, a hearing and/or any other rights I may have regarding due process prior to Drug Court sanctions (which sanctions may include but are not limited to: ... expulsion from Drug Court and execution of original sentence).” On April 6, 2015, Neal was sentenced to 420 months’ imprisonment for his alleged violation of the drug-court program. However, there ⅛ no record ’ of the program rules or a hearing on the alleged violation although Rule 24.7 of the Arkansas Rules of the Criminal Procedure and Administrative Order Number 4 both require verbatim transcripts of the proceedings. The entirety of the April 6, 2015 sentencing proceeding is as follows: Court: Mr. Neal, in being sent out of the 90-day program you basically have given us no choice on this one. Urn, at this point in time, we’re imposing your sentence. It’s 420 months in the Arkansas Department of Corrections. Neal: You Honor, can I ask you a question? Court: Sir? Neal: Can I ask a question? Court: Sure. Neal: When I—what I got wrote up for initially was dropped. They—then they in turn came and wrote me up, changed the write-up to a CR17. The lieutenant told me, said, Look, Neal, I done investigated it. We |4know y’all was horse-playing, but they’re going to charge you with something that’s cardinal rule so that you have to do some hold time. I said, Okay. I understand. He said, just do the hold time and go back. I said okay. I go to court, and in that court proceeding it’s just like this one. They’ve got—they push the tape recorder. It’s being recorded, everything. They read my charge. They let me say something. I stepped out. I come back in and they said they’re finding me guilty of the CR 17. I said okay. They said, do you want to say anything that might cause us to give you—I said, yes. I said, I’ve been here -60 days. Y’all interviewed me last week to be number two in charge. I didn’t get a write-up or nothing the whole time I was there. Me and Jamie—Jamie’s the coordinator. They interviewed me to be assistant coordinator. That would never have happened if I’d been cutting up like—you know that I mean? I—I did—they never had to tell me to tuck my shirt in, shave or nothing. I did everything I was supposed to do. Yes, on the Friday night at 8:00 getting out of the shower about eight dudes in there, locker room, horse-playing. We were cutting up. And I was found guilty of that. I admit that. I did—and I was found guilty of horse-playing. And I admit that. I did do that. We were just cutting up. They found me guilty of the CR17, but on the tape recording they—one of the options was to kick me out of the program. They said, this is what can happen if you’re found guilty. I said—then they read it off. This is all recorded. I said, okay. When they brought me back in and said they found me guilty, they said, 15 days in the hole and loss of privilege meaning I couldn’t go in the commissary or nothing else when I got out. And that’s on the tape recording. At that time, I went and I did 13 days of it. Ms. Gorham showed up to pick me up. On—on the recording—if they were gonna—if they would have kicked me out of the program for what I did, they would have had to have said that in the court proceeding, that—what they—they found me guilty and this is what they were doing. Your Honor, I promise you, they gave me 15 days in the hole and that was it. This is on the tape. This is all on recording. I’m not—I didn’t get—I went and did my—sat in | Rthe hole. I didn’t have nothing but a Bible. I sat right there and read it. The only time I seen anybody was when they brought me a tray other than that. That 15 days was all they wanted. They did not tell me I was kicked out. Now, what happened from the time that I got—went into the- hole til the time Ms. Gorham showed up to get me—when they told me to dress out, I thought I was going back and I had two days left. In the court proceed-’ ing—I’m just asking you this: if they say this is what we’re—this what your sentence is, is that not what it is? Or— Couet: You’re—and I’m going to answer it and we’re gonna be done in about two seconds; The process of ADC punishment and ADC inter-workings is not something I have any control, over. As I understand it, we were told—and there’s no question . about it. We were told to come get you. It has—again, as I understand it, it has to do not only with that incident, but in general, Jason, you’re not fit for this program because you don’t want to—you don’t want to do the things to get through this program that you have to do. And you end up with your negativism pulling everyone down. And we’re done. You can take him. Neal: Well, I never had a chance to being with— Coubt: Mr. Mallory— Neal:—if that’s the—if that’s the case. Court: Mr. Mallory— Neal: You did exactly what I said y’all were gonna do;. You gave me 35 years so that you could snow me in. I hope you’re happy. When God judges you, I hope you get the same thing. On April 22, 2015; Neal filed a motion to set aside the judgment and commitment. However, the record demonstrates that the circuit court failed to act on this motion. On May 28, 2015, Neal filed a petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure. In his petition, Neal argued that the procedure established by lathe court for participation in the drug-court program is in violation of his right to due process because it allows for expulsion from the drug-court program without notice and a hearing and that he received ineffective assistance of counsel. On August 20, 2015, the circuit court entered 'an order denying Neal’s petition for postconviction relief without a hearing. On September 9, 2015, Neal filed his notice of appeal. We will reverse the circuit court’s decision granting or denying post-conviction relief only when that decision is clearly erroneous. Williams v. State, 369 Ark. 104, 251 S.W.3d 290 (2007). “A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed.” Id. at 292 (quoting Howard v. State, 367 Ark. 18, 26, 238 S.W.3d 24, 31 (2006)). On appeal, Neal argues that the circuit court erred in denying his petition for postconviction relief because his right to due' process was violated when he was expelled from the drug-court program without a hearing, and these due-process rights were so fundamental that they could not be waived. To support his argument, Neal cites to Tornavacca v. State, 2012 Ark. 224, 408 S.W.3d 727. In response, the State argues that we should overrule Tornavacca because it permits a petitioner to raise due-process claims for the first time in a petition for Rule 37 relief. For the reasons that follow, we decline the State’s invitation to overrule Tornavacca but instead extend its protections to the present case. In Tornavacca, as in the present case, Tornavacca claimed a right to due process when 17he was subsequently expelled from the drug-court program. In holding that Tornavacca’s due-process claim qualified as an issue that may be raised in a Rule 37 proceeding, we explained, Moreover, “for many years, Arkansas has allowed collateral attacks upon a final conviction and appeal by means of a postconviction challenge to determine whether a sentence was void because it violated fundamental rights guaranteed by the Constitutions or laws of Arkansas or the United States.” Buckley v. State, 349 Ark. 53, 66, 76 S.W.3d 825, 833 (2002) (citing Davis v. State, 345 Ark. 161, 44 S.W.3d 726 (2001) (holding that Rule 37 does not permit a petitioner to raise questions that might have been raised at the trial or on the record on direct appeal, unless they are so fundamental as to render the judgment void and open to collateral attack)). We have acknowledged that some issues are “so fundamental as to void the judgment absolutely” and that such issues will not be waived for purposes of postconviction relief by the failure to raise them at trial. Rowbottom v. State, 341 Ark. 33, 36, 13 S.W.3d 904, 906 (2000) (quoting Finley v. State, 295 Ark. 357, 363, 748 S.W.2d 643, 647 (1988)). We have applied this exception to claims of double jeopardy in Rowbottom, and the denial of a trial by a twelve-member jury in Collins v. State, 324 Ark. 322, 920 S.W.2d 846 (1996). Similarly, this court made it clear in Swagger v. State, 227 Ark. 45, 296 S.W.2d 204 (1956), that a judgment is void where there is an absence of due process. See also Miller v. State, 239 Ark. 836, 394 S.W.2d 601 (1965) (holding that the failure to observe the constitutional safeguards of due process renders a criminal conviction illegal and void). 2012 Ark. 224, at 12-13, 408 S.W.3d at 736. Next, the State argued that Tornavacca had waived his rights of due process in the drug-court program when he entered the guilty pleas. We stated that “[i]t is true that a criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution.” Id. at 13, 408 S.W.3d at 737 (citing Echols v. State, 354 Ark. 414, 125 S.W.3d 153 (2003) (Imber, J., concurring) (citing United States v. Mezzanatto, 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995))). We held that Tornvacca’s waiver was a waiver only of his right to trial on the underlying charges, and his waiver did not include his right to due ^process prior to being expelled from the drug-court program. Id. at 13-14, 408 S.W.3d at 737. However, we ultimately affirmed the circuit court because Tornavacca received a full hearing on this claim that he was improperly expelled from the drug-court program during his Rule 37 proceedings. Id. at 15, 408 S.W.3d at 737. Here, unlike Tornavacca, Neal’s Rule 37 claims were denied without a hearing. Thus, the issue of whether a defendant can prospectively waive due process is squarely before us. Although this is an issue of first impression for this court, we find the Supreme Court of New Hamphsire’s decision in State v. LaPlaca, 162 N.H. 174, 27 A.3d 719 (2011) helpful to our analysis. In LaPlaca, the court held that a defendant could not execute a knowing, voluntary waiver of his right to a hearing on the imposition of sentence following removal from a drug-court program because the defendant did not know the accusations regarding the termination of the program at the time the waiver was executed. Further, the court explained that it was impossible for the defendant to have full knowledge of the allegations against him when the facts giving rise to those allegations had yet to occur. Id. at 725. “The defendant’s advance waiver of the right to any and all hearings was akin to pleading guilty to any future allegations brought against him because the effect of such a waiver eliminated the obligation of the State to prove the allegations against him, and deprived him of the opportunity to contest them.” Id. Accordingly, the court held, It would subvert the requirements of due process to uphold the defendant’s prospective waiver of his right to a hearing. When the defendant faces the potential imposition of a full sentence of incarceration, an advance waiver of any and all hearing rights presents a serious risk of an erroneous deprivation of the defendant’s significant liberty interest. To allow this course in the present case would be inconsistent with the community’s sense of justice, decency and fair play. Id. at 725-26; see also Staley v. State, 851 So.2d 805 (Fla.Dist.Ct.App.2003) (stating “[the defendant] simply could not have knowingly and intelligently waived his right to contest allegations against him without knowing what those allegations were”).[3] Here, applying that same analysis, we extend the holdings of Tornavacca and LaPlaca to the present case and hold that the right to minimum due process before a defendant can be expelled from a drug-court program is so fundamental that it cannot be waived by the defendant in advance of the allegations prompting the removal from the' program. Neal was | lflallegedly expelled from the drug-court program for horseplaying. During the sentencing proceeding, Neal argued that he had already been disciplined for the violation. Further, as noted above, the circuit court changed the justification for expulsion from the drug-court program as follows: You’re—and I’m going to answer it and we’re gonna be done in about two seconds. The process of ADC punishment and ADC inter-workings is not something I have any control over. As I understand it, we were told—and there’s no question about it. We were told to come get you. It has—again, as I understand it, it has to do not only with that incident, but in general, Jason, you’re not fit for this program because you don’t want to— you don’t want to do the things to get through this program that you have to do. And you end up with your negativism pulling everyone down. And we’re done. You can take him. Because Neal was not given a hearing[4] or an opportunity to contest his expulsion from the drug-court program, it is unclear to this court precisely how the decision to expel Neal from the drug-court program was made or on what basis.[5] Neal sought to challenge the allegations against him during the sentencing proceeding; however, the decision to expel Neal |nfrom the drug-court program had already been made, outside of Neal’s presence. As in LaPlaca, Neal was denied the opportunity to contest the allegations against him based on the “waiver” contained in the drug-court admission form, a document that was executed before Neal was aware of which allegations would be made against him. Thus, Neal’s advanced waiver amounted to a deprivation of his right to due process when he could not have knowingly and intelligently waived his light to contest allegations against him without knowing what those allegations were. Staley, supra. The dissent takes issue with our analysis concerning Neal’s expulsion from the drug-court program and contends that the drug-court program and the Arkansas Department of Community Correction (“ADCC”) residential treatment program are two separate programs. However, this is not supported by the record. The Saline County Adult Drug Court Admission Form states that the “Drug Court Participant” consents “to be supervised by the ADCC.” Further, the Drug Court Act authorizes the establishment of a drug-court program in each judicial district. Pursuant to Arkansas Code Annotated section 16—98—303(b)(¿), a drug-court program may utilize services from several different agencies, including the ADCC, and those services may include the ADCC “residential treatment program.” The Drug Court Act merely authorizes drug courts, funding, and agency support. However, absent from the Drug Court Act, is any authority for ADCC or any other provider to expel a drug-court participant from a drug-court program. Moreover, the dissent’s reliance on Carroll v. Hobbs, 2014 Ark. 395, 442 S.W.3d 834 (per curiam) and Johnson v. State, 2012 Ark. 212 is misplaced. This court’s refusal to weigh 112in on the ADCC’s decision concerning parole eligibility is of no moment because parole and the drug-court program are entirely distinct. Arkansas Code Annotated section 16-93-101(7) defines parole as “the release of the prisoner into the community by the board prior to the expiration of his or her term, subject to conditions imposed by the board and to the supervision of the Department of Community Correction.” Thus, in parole, the defendant has already been sentenced by the court and is no longer subject to the court’s jurisdiction. In contrast, a drug-court program is more akin to probation. Probation is defined as “a procedure under which a defendant, found guilty upon verdict or plea, is released by thé court without imprisonment, subject to the conditions imposed by the court and subject to the supervision of the Department of Community Correction.” Ark.Code Ann. § 16-93-101(8). Accordingly, because a drug-court program is analogous to probation, drug-court participants should be afforded the same protections as a probationer upon revocation. Based on the record before us, the failure to hold a hearing prior to Neal’s expulsion from the drug-court program amounted to a due-process violation, and the circuit court clearly erred in denying Neal’s petition for postconviction relief on this basis. Accordingly, we reverse the circuit court’s order denying Neal’s petition for postconviction relief and remand with instructions for the circuit court to enter an order granting Neal’s petition for postconvietion relief, vacating the sentencing order, and ordering that a hearing be held in accordance with this opinion to establish whether Neal should be expelled from the drug-court program. Because we reverse on this basis, we need not address Neal’s' ineffective-assistance-of-counsel claims. | iaReversed and remanded. Goodson, Hart, and Wynne, JJ., concur. Brill, C. J., and Danielson and Wood, JJ., dissent. . The guilty-plea statement does not contain a file-mark stamp; however, it is dated August 4, 2014. Additionally, despite Neal's simultaneous plea of guilty to all three charges, the possession-of-firearms and possession-of-drug-paraphernalia charges arise from, a separate case filed in Saline County Circuit Court, 63CR-14-465. . During oral arguments, the State argued that the guilty-plea statement contained a mere scrivener’s error because Neal was charged as a habitual offender and thus the recommended sentence of 420 months’ imprisonment was correct. Noticeably absent from the record are felony informations or charging instruments for any of the three charges. Thus, we are unable to determine whether Neal was, in fact, charged as a habitual offender. Further, we note that Arkansas Code Annotated section 5-4-104(a) (Supp.2015) provides that "[n]o defendant convicted of an offense shall be sentenced otherwise than in accordance with this chapter.” We have held,, since the enactment of our criminal code, that sentencing shall not be other than in accordance with the statute in effect at the time of the commission of the crime. State v. Joslin, 364 Ark. 545, 222 S.W.3d 168, (2006) (citing Taylor v. State, 354 Ark. 450, 125 S.W.3d 174 (2003); State v. Murphy, 315 Ark. 68, 864 S.W.2d 842 (1993)). Where the law does not authorize the particular sentence pronounced by a trial court, the sentence is unauthorized and illegal, and the case must be reversed and remanded. Joslin, supra (citing Taylor, supra; State v. Stephenson, 340 Ark. 229, 231, 9 S.W.3d 495, 496 (2000)). . Further, we note that several other jurisdictions have held that drug court participants are entitled to hearings because drug court terminations affect liberty interests and therefore the Due Process Clause—the right cannot be prospectively waived. See National Drug Court Institute, The Drug Court Judicial Benchbook § 8:4, at 163-64 (2011). "The consequences of termination from drug court are comparable to those sustained in a probation revocation .... the best practice is to accord drug court participants the same due process rights enjoyed by probationers.” Id. (citing People v. Anderson, 358 Ill.App.3d 1108, 295 Ill.Dec. 557, 833 N.E.2d 390 (2005); State v. Cassill-Skilton, 122 Wash.App. 652, 94 P.3d 407, 410 (2004); Hagar v. State, 990 P.2d 894, 899 (Okla.Crim.App.1999)). In Gosha v. State, 931 N.E.2d 432 (Ind.Ct.App.2010), the court explained that termination from drug court requires (he written notice of the claimed violations, the disclosure of the evidence against the defendant, the opportunity to be heard and present evidence, the right to confront and cross-examine witnesses, and a neutral and detached hearing body. See also Harris v. Commonwealth, 279 Va. 541, 689 S.E.2d 713, 713 (2010) ("Consequently, because Harris had no opportunity to participate in the termination decision, when deciding whether to revoke Harris’ liberty and impose the terms of the plea agreement deprived Harris of the opportunity to be heard regarding the propriety of the revocation of his liberty interest.”). Finally, in Gagnon v. Scarpelli, 411 U.S. 778, 790, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the United States Supreme Court required a probationer be accorded a preliminary and final revocation hearing. Before the preliminary hearing, the probationer must be notified of the hearing, its purpose and the alleged violation, the limited right to confront and call witnesses, and the probationer’s right to be present, as well as given a written report of the hearing. At the probation revocation hearing, similar elements are required, including (1) written notice of the violation; (2) disclosure of the evidence against the probationer; (3) an opportunity to be present and testify; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral magistrate; and (6) a written finding of the evidence relied upon and the reasons for revocation. Nátional Drug Court Institute, The Drug Court Judicial Benchbook, § 8:4. . The dissent states Neal "already had that hearing.” This statement is inaccurate, the circuit court conducted a sentencing hearing. . We note that Arkansas Code Annotated section 16-98-303(e) states that each judicial district may develop a training and implementation manual for drug-court programs with the assistance of the: (1) Department of Human Services; (2) Department of Education; (3) Department of Career Education; (4) Department of Community Correction; and (5) Administrative Office of the Courts. This manual is also noticeably absent from the record.